## JOHN Q. HOYT *v.* JOHN M. SMITH.

### *Slander.*

Though it is not proper to join in the same count as grounds of recovery a slander and a libel, yet when the written accusation is matter of inducement and preliminary to the verbal one, it may be set forth as such in the declaration.

In an action for slander it is proper to include in a single count words spoken at different times, and to different persons, in relation to the same subject.

In an action for slander the innuendoes "*meaning to insinuate and falsely repre-sent,*" "*meaning to insinuate and be understood,*" or "*meaning and intending to represent,*" "that the plaintiff had stolen the money aforesaid," indicate that the defendant's charge against the plaintiff was that he had stolen the money, and are therefore sufficient.

Upon a motion in arrest of judgment in an action of slander the allegations in the declaration are to be examined in connection with the whole record, and if, though imperfect in themselves, the imperfection is supplied by an admission in the plea, the motion in arrest will be overruled.

The declaration in slander in this case considered, and adjudged sufficient on a motion in arrest after verdict for the plaintiff.

CASE for slander.   The declaration was as follows:

" In a plea of the case for that the plaintiff says that he now is an honest and faithful citizen of the State, and as such has always behaved and conducted himself, and until the committing of the several grievances by the defendant hereinafter mentioned, was always esteemed, reputed and accepted by and amongst all his neighbors and other good citizens of the State to whom he was in any wise known, to a be person of good name, fame and credit, and the plaintiff has never been guilty, or until the time of committing of the several grievances by the defendant, as hereinafter mentioned, been suspected to have been guilty of theft, robbery or any felony, or any such crime, by means of which said premises he, the plaintiff, before the committing of the said several grievances by the defendant, as hereinafter mentioned, had deservedly obtained the good will and credit of all his neighbors and other worthy citizens of the State to whom he was in any wise known, and before committing the several grievances here-inafter mentioned, to wit, on the 29th day of December, 1856,

he, the plaintiff, held the commission of deputy postmaster at Stevens' Village, in Barnet aforesaid, under the post office department of the United States, and had so held such commission for a long time before, and did then and there discharge the duties of said commission in such office, and had for a long time before performed and did then perform the duties pertaining to such appointment, without being guilty of any malfeasance or misfeasance in such office, and as a faithful, honest deputy postmaster at said Barnet aforesaid, on the year and day aforesaid, and a long time before, was so accredited and esteemed by the post office department of the United States, and by his friends and neighbors, citizens of Vermont and residents of said Barnet, who were interested and did business at the post office of which the said plaintiff so had charge at said Barnet, yet the defendant well knowing the premises, but contriving and intending maliciously and wickedly to injure the plaintiff in his good name, fame and credit, and to bring him into public scandal, infamy and disgrace with and amongst all his neighbors and other good and worthy citizens of the State, and to cause it to be suspected and believed by those neighbors, citizens and the post office department of the United States, that the plaintiff had been and was guilty of feloniously taking from the post office at said Barnet, of which the plaintiff then and there had the charge, as deputy postmaster aforesaid, a valuable letter containing forty-six dollars in current bank notes, and thirty postage stamps of the value of ninety cents, and to subject him to the pains and penalties inflicted by law on persons guilty of such offences, and to vex, harass, oppress, impoverish and wholly ruin him, (the plaintiff) he (the defendant) on or about the 9th day of January, 1857, communicated and published in writing to Ephraim Nois, then of Hardwick, in the county of Caledonia, the following false intelligence, among others, to wit, "I (meaning the said defendant) sent you (meaning the said Ephraim Nois) $46.90 by mail on the 29th day of December (meaning forty-six dollars and ninety cents on the 29th day of December last) directed to E. Nois, (meaning Ephraim Nois) Hardwick, Stevens' Village, Vt. I (meaning the said defendant) sent it (meaning the money) according to the directions you (meaning the said Nois) left with Mr. James Welch.

Hoyt v. Smith.

The odd change (meaning the ninety cents) was in postage stamps." Which false and malicious intelligence was received by said Ephraim Nois and accredited as true, while the said defendant was well knowing to the contrary ; and that he never sent by mail any such sum of money or odd change in postage stamps in any such letter or any letter whatever directed as aforesaid, or put or caused the same to be put into a post office to be mailed or otherwise. And the said defendant further maliciously and falsely intending to charge upon the plaintiff the crime aforesaid, and before the committing of the said several grievances hereinafter mentioned, did on or about the 13th day of February, 1857, further publish and declare in a certain letter directed by the said defendant to one E. B. Guyer, of South Hardwick, Vermont, among other things the following false intelligence in writing, to wit, " Respecting the letter and money which I (meaning the defendant) sent to friend Nois (meaning Ephraim Nois aforesaid) I (meaning the defendant) will give you (meaning the said Guyer) the particulars. On the 29th day of December last I (meaning the defendant) took four ten dollar bills, one five dollar bill, one one dollar bill, put them in a letter, and then I (meaning the defendant) put the letter and money into an envelope. I (meaning the defendant) went to the post office in this place (meaning the post office at Stevens' Village, in said Barnet,) and saw Mr. Hoyt, the postmaster, (meaning the plaintiff.) I (meaning the defendant) bought of him (meaning the said plaintiff) thirty letter stamps, and handed him (meaning the plaintiff) a one dollar bill. He (meaning the plaintiff) gave me back ten cents. I (meaning the defendant) then took the letter out of my (meaning his) memorandum book and folded the stamps (meaning the letter stamps) in the presence of Mr. Hoyt, (meaning the plaintiff) so they would go into the letter. Mr. Hoyt (meaning the plaintiff) saw the edges of the bills when I (meaning the defendant) put the stamps into the letter. I (meaning the defendant) sealed the letter (meaning the letter containing the money and letter stamps) in his (meaning the said Hoyt's) presence. I (meaning the defendant) told him (meaning said Hoyt) I (meaning said defendant) wanted the letter (meaning the letter aforesaid) to go out that day (meaning the day on which the said defendant put into said

letter the stamps and money) for it was a valuable letter, and he (meaning said Hoyt) told me it should, (meaning said letter.) I (meaning the defendant) started to go out, (meaning out of the plaintiff's office;) I (meaning the defendant) looked through the square boxes in the office, (meaning the post office aforesaid;) I (meaning the defendant) saw him (meaning the said Hoyt) turn the letter (meaning the letter aforesaid) over and look at it, which he (meaning the said Hoyt) never did with any other of the letters that I (meaning the defendant) handed him in the office, (meaning the said Hoyt's office.) There was another gentleman in the store who heard what I (meaning the said defendant) said to him, (meaning the said Hoyt) and saw me (meaning the said defendant) purchase the stamps of John Q. Hoyt. On the 9th of January I (meaning the defendant) received a dunning letter from Mr. Nois (meaning the said Ephraim Nois) saying that I must send a check on the Beloit Bank, Wisconsin, for the balance of the oats. I (meaning the defendant) then began to have suspicion that Mr. Hoyt (meaning the plaintiff) had taken the letter containing the stamps and money aforesaid."

Which letter in writing containing such false and deceitful intelligence was on or about the 13th day of February, 1857, received by said Guyer as if true, the said defendant well knowing the same to be untrue and false, nevertheless the said defendant further maliciously contriving and intending to injure the plaintiff in his good name and credit, and to deprive him of his business as deputy postmaster, and the profits and gain thereof, and to bring him to scandal, disgrace and infamy, and to subject him to punishment, did on or about the 7th day of January, 1857, in a certain discourse then and there held at said Barnet, of and concerning the plaintiff, and of and concerning the letter, money and postage stamps aforesaid, utter, speak and publish falsely and maliciously the following words in the presence and hearing of divers persons, that is to say, "Hoyt (meaning the plaintiff) has got the money, (meaning that money before described as enclosed in a letter directed to Ephraim Nois as aforesaid) meaning and intending to insinuate that said Hoyt had withheld the letter aforesaid, and feloniously taken the money therefrom, and had committed the crime of larceny. Hoyt (meaning the plain-

tiff) has got that money and postage stamps, and if I had not done just as I was requested to do, I should have brought a suit against Hoyt three weeks ago," meaning and intending to insinuate and falsely represent that he, the defendant, had mailed forty-six dollars in bank notes to the address of Ephraim Nois, as the said Nois had requested, by delivering the same to said plaintiff as postmaster at said Barnet, and the odd change in postage stamps, and that said Hoyt had stolen the same and was liable therefor, and as such, he, the defendant, would have brought an action against said Hoyt to recover the same, had he, the said defendant, not mailed the same as he, Nois, had directed the defendant.

And the defendant continuing his malice did then and there, in the hearing of divers persons, utter and speak the following false and scandalous words of and concerning the plaintiff, that is to say, I, (meaning the defendant) on the 29th day of December last, put into an envelope four ten dollar bank notes, one five dollar bank note and one one dollar bank note, all on the Bank of Newbury, and thirty postage stamps for ninety cents, directed to E. Nois, Hardwick, Stevens' Village, Vermont, with a letter addressed to said Nois. I (meaning the said defendant) handed the said envelope containing the letter, postage stamps and money, to John Q. Hoyt, requesting him to forward the same that day, stating to him, Hoyt, that said letter was valuable. I (meaning the defendant) saw said Hoyt behind the post office box hold the letter between him and the light, which excited my suspicion at the time. The letter has never been received by said Nois. Hoyt has got it. Meaning to insinuate and be understood that said Hoyt had stolen said letter, money and postage stamps, and thereby was guilty of a felony, (meaning and intending to charge him, the said plaintiff, with such crime.)

And the said defendant continuing his malice as aforesaid, on or about the 10th day of January last aforesaid, at said Barnet, did utter, speak and publish falsely and maliciously the following words in the presence and hearing of divers persons, citizens as aforesaid, to wit, in speaking of and concerning the letter, money, postage stamps and envelope aforesaid, he, the said defendant, said, "I know that Hoyt has got the money and I can prove it," meaning and intending to represent that said Hoyt had stolen the

money before mentioned, and that he, the defendant, could prove it. Whereas in truth and fact, the defendant, at the time of his speaking and publishing the aforesaid words, had not handed or delivered to said Hoyt, as postmaster at said Barnet, any such letter containing money and postage stamps addressed to E. Nois as aforesaid, so by him asserted, or to the said Hoyt any such letter. By means of speaking of the said false and scandalous words of and concerning the plaintiff, and of and concerning the letters aforesaid, concerning the said Hoyt as deputy postmaster at said Barnet, he, the said plaintiff, was not only greatly injured in his good name and reputation, but was taken to have committed and been guilty of theft, and of taking a valuable letter from the post office in Barnet, containing forty-six dollars in money and ninety cents' worth of postage stamps, feloniously, by which he has lost the esteem and good will of many persons of business, wealth and influence, with whom he had before very large and profitable concerns, but who of late have refused to trust him with their property or to continue any connection with him whatsoever, by means of which he has sustained great damage, to wit, three thousand dollars, at Barnet. aforesaid, for the recovery of which with just cost the plaintiff brings suit."

The defendant pleaded the general issue, with the following notice of special matter in justification.

"And the defendant gives notice that under said issue he will offer evidence tending to prove that the defendant, on the 29th day of December, 1856, put a letter into the post office kept by the plaintiff at Barnet, containing forty-six dollars in money, and thirty United States postage stamps of the value of ninety cents, and that said letter was sealed and addressed to one E. Nois, at Stevens' Village in East Hardwick, to be by the plaintiff transmitted to the said Nois, by mail; that the plaintiff took said letter, but did not send the same by mail to the said Nois, or transmit the same in any way by mail from his said office, but kept and detained said letter and money, and converted the same to his own use, and the defendant, speaking of said letter and money so lost by him and kept by the plaintiff, did *write* the words set forth in the plaintiff's declaration, and did also speak the same

words, in said declaration set forth, as he might well do, for the words so written and spoken are true."

The case was tried by jury, at the December Term, 1858,— POLAND, J., presiding. The plaintiff on trial waived all claim to recover for the words charged in the declaration as having been written by the defendant of the plaintiff, and the case was submitted to the jury upon those portions of the declaration only which charge the defendant with speaking slanderous words. The jury returned a verdict for the plaintiff, and the defendant filed the following motion in arrest of judgment.

" And now after verdict comes the defendant, and before judgment moves the said court that said verdict be set aside and said judgment be arrested, and for cause saith that the plaintiff's declaration, and the matter therein alleged, are not sufficient in law to found any judgment upon in this, to wit :

1. Because such declaration contains allegations for libel joined in the same counts with allegations for verbal slander.

2. Because said declaration contains several and distinct allegations of libel and slander upon different occasions at divers times, in one and the same count.

3. That said declaration is otherwise defective and insufficient in substance."

The county court overruled the motion in arrest and rendered judgment on the verdict for the plaintiff, to which the defendant excepted.

*Peck & Colby,* for the defendant.

*B. N. Davis,* and *J. D. Stoddard,* for the plaintiff.

BARRETT, J. This is an action of slander which was tried in the county court upon the general issue, and notice of the truth of the words in justification. The plaintiff obtained a verdict. The questions before us arise under a motion in arrest, for the alleged insufficiency of the declaration.

For the purpose of a point the defendant claims that the declaration sets forth, as a cause of action and ground of recovery, *written libels,* as well as *verbal slanders.* However this might

seem upon a first impression, an attentive examination satisfies us that such is not the case.

The idea of the pleader seems to have been that it was proper, and perhaps necessary, as a part of the preliminary averments, in order to devolope the subject matter and occasion of the alleged slander, to set forth what had been done by the defendant by way of starting and giving currency to the pretence that he had deposited such a letter, with the money and stamps, in the plaintiff's post office, in connection with circumstances and incidents calculated to beget the suspicion, and perhaps the belief, that the plaintiff had kept the letter and stolen the money and stamps. This is evinced by the manner in which that matter is incorporated into the declaration, "that the defendant on or about the 9th day of January, 1857, communicated and published in writing to Ephraim Nois, the following false intelligence." Then follows the letter in words, to the effect that the defendant put the letter in the office with the money and stamps enclosed, but without any statement or insinuation that the plaintiff had kept the letter and stolen its contents. The declaration contains no innuendo that by said letter to Nois the defendant meant to charge or insinuate that the plaintiff had kept the letter and stolen the contents.

The declaration then proceeds thus: "and before the committing the several grievances hereinafter mentioned, the defendant did, on or about the 13th day of February, 1857, further publish and declare in a letter directed to Guyer, among other things, the following false intelligence in writing," etc., and then gives the said letter in words, which in effect states the particulars of the defendant's mailing the letter with the money and stamps enclosed to Nois, with incidents and circumstances, and particularly the receiving of a dun from Nois, and closes by saying, "I then began to have suspicion that Mr. Hoyt had taken the letter containing the stamps and money aforesaid." This statement of suspicion is the only thing in the letter to Guyer that looks in the direction of charging the plaintiff with having taken the money; and the declaration contains no innuendo that the defendant meant, in that letter, to charge the plaintiff with having so done; but on the contrary, it proceeds, "which letter in writing, containing said false and deceitful intelligence, was received by said Guyer

as if true, the defendant well knowing the same to be untrue and false, nevertheless the defendant further intending, etc.," and then sets forth the speaking of the slanderous words, with proper colloquium and innuendoes. From this manner of passing from the statements as to said two letters to the setting forth of the verbal slander, it is apparent that those statements were designed and understood to be merely preliminary and introductory to the counting upon the verbal slander. This view is strongly countenanced by the omission in those statements of material elements that are indispensable in a count for *libel*, as well as by other internal evidence which the declaration contains.

Assuming that the declaration counts upon verbal slander only, it has been made a question, about which even counsel on the same side do not agree, whether it is a declaration in one, two, or three counts. We do not regard it of much importance, for the purposes of the present decision, which view should be adopted, for we understand it to be proper to include in a single count, words spoken at different times, and to different persons, in relation to the same subject, as well as to make several counts, each containing the words spoken on a single occesion; 1 Starkie on Sland. 443, Wend. Ed.

In case of a single count containing words spoken on different occasions, some of which are not actionable, if entire damages should be given upon the whole count, judgment would be arrested with as much certainty, at least, as it would be if the declaration had contained a distinct count for each set of words, and entire damage should be given. See Starkie *ubi supra.*

If we felt compelled to hold that there are more than one count in the declaration, we should be strongly inclined to there being three instead of two. But we see no occasion so to hold. We are able, with great satisfaction, to agree with the author and draughtsman of the declaration in what he claims for his own handiwork, that it is a declaration in a single count, for words spoken on several occasions.

If these views were to be adopted by the court, no question was made but that the preliminary averments are sufficient.

The next topic of debate is, whether the slander is sufficiently averred.

Hoyt *v.* Smith.

In the first place, as to the first and second averments of the slander, the sufficiency of the colloquium is not questioned. In the next place, it is not denied that the words counted upon are capable of importing a charge of stealing the money and postage stamps, nor that the innuendoes make a proper application of these words in the direction of such a charge; but it is claimed that the innuendoes are not sufficiently direct and explicit to that effect.

In the first averment of slander the innuendo proceeds thus: "meaning and intending to insinuate that said Hoyt had withheld the letter and feloniously taken the money therefrom, and had committed the crime of larceny," and closes thus: "meaning and intending to insinuate and falsely represent, etc., that said Hoyt had stolen the same [the money] and was liable therefor, etc."

The second averment of slander closes by way of innuendo thus: "meaning to insinuate and be understood that said Hoyt had stolen said letter, money and postage stamps, and thereby was guilty of felony, meaning and intending to charge him, the said plaintiff, with such crime." The third averment of slander closes by way of innuendo thus: "meaning and intending to represent that said Hoyt had stolen the money before mentioned, etc."

We do not regard the criticism made by counsel to be warranted by the rules of construction, applicable to a declaration, after a verdict, under a motion in arrest; nor, indeed, to be very fully sustained by the ordinary rules of grammar. In our view the expression is tantamount to saying that the defendant meant, by the words spoken, that the plaintiff was guilty of the crime of larceny, and that he intended so to insinuate, represent and have it understood. What is thus said about *insinuating* and *representing* does not operate to blunt and round off the point of a direct averment of slander, but to carry forward the charge *meant* by the defendant into its virulent operation of insinuating and causing it to be understood that the plaintiff was, in fact, guilty of that henious crime.

But it is further objected that the third averment is defective in not having a proper colloquium; that it does not show that the words were spoken of and concerning the *plaintiff*, but only

of and concerning the *letter and money*. Without taking time to discuss this objection, as it would stand if it had been raised by a demurrer, it is sufficient to say that the case is before us on the whole record. That record contains the defendant's notice of special justification, which is used as a substitute for a technical plea. What it sets forth or admits, must, as a part of the record, be as effectual against the defendant as if it had been done in the form of a plea. That notice sets forth and admits the speaking of the words, and that they were spoken of and concerning the plaintiff. Upon a very familiar rule, this supplies any omission in this respect in the declaration; *Wood* v. *Scott* 13 Vt. 42; *Sanderson* v. *Hubbard*, 14 Vt. 462; 1 Ch. Pl. 671.

Only a single other objection remains to be noticed, viz: that the slander is averred to be of the plaintiff in his *official* character as postmaster, and so the words become actionable only by reason of *special damage*, yet only general damage is averred.

We deem this objection to be unfounded. The declaration, in the colloquium, states the speaking to have been of and concerning the plaintiff, not in his office of postmaster, but personally, as a member of the community. What is said about his being postmaster is in the preliminary averments, and was inserted for the purpose of showing the plaintiff's relation to the subject matter and occasion of the slander. As the words are abundantly actionable when spoken of one *personally*, in his private character and relations, it is needless to discuss whether they would be any the less so if spoken of a person in his *official* character and relations.

While we may not participate in the favor with which the author of this declaration regards it, so far as to feel warranted in commending it for study and adoption, as a model of artistic perfection; still, we think that by the rules of the law it must be held to have abundant substance and sufficient form to entitle it to sustain the verdict, as against the motion in arrest.

The judgment is affirmed.