## EUGENE R. DARLING *vs.* O. C. CLEMENT.

### January Term, 1897.

Present: ROSS, C. J., TAFT, ROWELL, TYLER and START, JJ.

*Slander—Prefatory Averment—Meaning of Words—Damage to One in his Occupation—Costs.*

When the actionable quality of words arises from extrinsic circumstances, a prefatory averment of the existence of such circumstances is necessary. But it is otherwise when the actionable quality inheres in the words themselves; the meaning claimed may then be ascribed by the innuendo, the truth of which must be determined by the jury.

Words, in slander, are to be taken neither *in mitiori sensu* nor *in malam partem*, but in their plain and natural meaning.

The words here charged, which impute the stealing by the plaintiff of wood from the land of the defendant, naturally mean the felonious taking of wood cut down, and not a mere trespass in respect to standing trees.

A count which declares upon three sets of words spoken at different times on the same day to the same persons concerning different subjects, is bad for duplicity.

If the natural and reasonable tendency of the words charged is to injure the plaintiff in his occupation, it is not necessary to allege special damage nor that the words were spoken of the plaintiff in relation to his business.

Words charging the plaintiff with habitual intemperance have a natural tendency to injure him in his business of keeping and instructing boys, and are, therefore, actionable; but otherwise of words imputing bad financial credit.

Words charging the plaintiff with permitting the boys to steal the defendant's apples, though not actionable *per se* as amounting to a charge of "being privy and consenting to larceny," are actionable as having a natural tendency to injure the plaintiff in his said business.

For the same reason a charge of insolvency against one engaged in buying and selling live stock and farm produce, is actionable without an averment of special damage.

A demurrer to a declaration that is general to all the counts by enumeration and special to some of them, is equivalent to a separate demurrer to each count.

Both parties having excepted, the plaintiff, obtaining a reversal upon one point, is entitled to costs in this court.

SLANDER. Heard on demurrer to the declaration at the June Term, 1896, Orange County, *Munson*, J., presiding. The first and second counts were adjudged insufficient, and the plaintiff excepted. The third count was adjudged sufficient and the demurrer was overruled as being to the whole declaration. The defendant excepted.

The demurrer was general to all the counts by enumeration and special to the second and third. The declaration is sufficiently stated in the opinion.

*Darling & Darling* for the plaintiff.

The words alleged in the several counts are actionable *per se*, and special damage need not be alleged. Odgers, Libel and Slander, 17, 53; Cooley, Torts, 195; *Onslow* v. *Horne*, 3 Wils. 186; *Moore* v. *Francis*, 121 N. Y. 199.

The words set forth in the first count amount to an accusation of larceny, a felony at common law. Words, in slander, are to be understood in their plain and popular sense. It is not necessary that they should charge the commission of a crime with technical accuracy. *Gorham* v. *Ives*, 2 Wend. 534; *Lewis* v. *Hudson*, 44 Ga. 568; *Miller* v. *Miller*, 8 Johns. 74; *Kennedy* v. *Gifford*, 19 Wend. 296; *Goodrich* v. *Woolcott*, 3 Cow. 231; *Wilson* v. *McCrory*, 86 Ind. 170; *Roberts* v. *Camden*, 9 East 93.

The doctrine of *in mitiori sensu* is exploded. *Demarest* v. *Haring*, 6 Cow. 76.

The words set forth in the first count charge the crime with sufficient precision. *Dunnell* v. *Fiske*, 11 Met. 551; *State* v. *Parker*, 34 Ark. 158; *Baker* v. *Pierce*, 6 Mod. 23; *Haag* v. *Cooley*, 33 Kan. 387.

The words being capable of the construction ascribed by the innuendo, it is for the jury to say in what sense they were used. *Smith* v. *Miles*, 15 Vt. 245; *Goodrich* v. *Woolcott*, *supra*; *Dunnell* v. *Fiske*, *supra*; *Demarest* v. *Haring*, *supra*; *Gibson* v. *Williams*, 4 Wend. 320; *Ex parte Baily*, 2 Cow. 479; *Royce* v. *Maloney*, 57 Vt. 325: 58 Vt. 437.

The words set forth in the second and third counts are actionable *per se*, for they tend to injure the plaintiff in the occupation in which he is alleged to be engaged. *Moore* v. *Francis*, 121 N. Y. 199; Odgers, Libel and Slander, 65, 74; *Brandrick* v. *Johnson*, 1 Vict. L. R. C. L. 306; *Drake* v. *Hill*, T. Raym. 184; *Sewall* v. *Catlin*, 3 Wend. 291; *Phillips* v. *Hœfer*, 1 Pa. St. 62.

Where the words are such as necessarily to injure the plaintiff in his occupation no allegation of such damage is necessary. *Chaddock* v. *Briggs*, 13 Mass. 248; *Stanton* v. *Smith*, 2 Ld. Raym. 1480; *Jones* v. *Littler*, 7 M. & W. 423; *Reeve* v. *Holgate*, 2 Lev. 62.

The charge that the plaintiff permitted the boys to steal the defendant's apples amounted to an accusation of "being privy and consenting to larceny." *Mot* v. *Butler*, Cro. Car. 236.

The words set forth in the second count all relate to the same subject, namely, the plaintiff's business and his fitness therefor. They were spoken on the same day and to the same person and, therefore, constitute but a single cause of action and are properly included in one count. *Hoyt* v. *Smith*, 32 Vt. 304; Anthon's Prec. * 307.

If necessary, the second count may be considered as three separate counts with faulty introductions and conclusions which are aided by this demurrer. *Hooker* v. *Smith*, 19 Vt. 151; I Chitty Pl. 663; Anthon's Prec. * 307.

*R. M. Harvey* and *John H. Watson* for the defendant.

The first count is insufficient unless the words charged are actionable *per se* as imputing an infamous crime. *Redway* v. *Gray*, 31 Vt. 292; *Posnett* v. *Marble*, 62 Vt. 481. There is no averment of extrinsic matter and the words themselves when taken together amount to an accusation of a trespass merely. *McCourt* v. *People*, 64 N. Y. 586; *Allen* v. *Hillman*, 12 Pick. 101; *Ogden* v. *Riley*, 14 N. J. L. 186; *Brite* v. *Gill*, 2 T. B. Monroe 65: 15 Am. Dec. 122;

*Wing* v. *Wing*, 66 Me. 62: 22 Am. Rep. 548; IX Bacon's
Abr. 83–4; *Merritt* v. *Dearth*, 48 Vt. 65; *Stees* v. *Kemble*, 27
Pa. 112; *Glines* v. *Smith*, 48 N. H. 259; *Fitzgerald* v.
*Robinson*, 112 Mass. 371.

There being no averments giving the words other and
sinister meaning, they must be understood in their most
innocent sense. *Merritt* v. *Dearth*, 48 Vt. 65; *Sheridan* v.
*Sheridan*, 58 Vt. 504. The innuendo cannot extend the
sense of the words beyond their own meaning. *Fitzsimmons*
v. *Cutler*, 1 Aik. 33.

"Wood" means timber growing as well as cut. Worcester's
Dict. At common law the severing and carrying away of a
tree is not larceny, but trespass merely. II Bish. Crim.
Law, §§ 762–3; *Stitzell* v. *Reynolds*, 67 Pa. 54; *Ogden* v.
*Riley*, 14 N. J. L. 186. V. S. 4946 does not aid the plaintiff
because the elements of that crime are lacking in the words
charged.

The second count is bad for duplicity. Towns., Slander,
§ 347; *Rathbun* v. *Emigh*, 6 Wend. 407; *Milligan* v. *Thorn*,
6 Wend. 412; *Dioyt* v. *Tanner*, 20 Wend. 190; *Churchill* v.
*Kimble*, 3 Ohio 409; *Cracraft* v. *Cochran*, 16 Iowa 301;
*Patterson* v. *Wilkinson*, 55 Me. 42: 92 Am. Dec. 568. *Hoyt*
v. *Smith*, 32 Vt. 304, is the most extreme case in the
plaintiff's favor but is distinguishable from the present in
that the words there charged all related to the same subject.

The third count is insufficient for want of an averment of
special damage. The count cannot assume that credit was
important to the business. *Ostrom* v. *Calkins*, 5 Wend. 263;
Newell, Slander, 192–3.

ROWELL J. The words declared upon in the first count
are, "I will sue him (innuendo the plaintiff) for stealing lumber
from my land. One day Gene Darling wanted some wood,
so he ordered Mel. Dickinson to get some. Mel. asked
Darling where he should get it. Darling said, 'Down by
Clement's near the swamp.' Then Mel. said, 'If you want
to get wood from Clement's place, you better get some one

else to get it.' Then Darling said, 'That is all right, we often get wood from there.'" Innuendo, meaning and insinuating thereby, and by the hearers understood to mean and insinuate, that the plaintiff had been guilty of stealing wood from the lands and premises of the defendant. It is claimed that this language is not actionable *per se*, for that the words, "I will sue him for stealing lumber from my land," are so qualified by the subsequent words that, taking them together, they do not impute larceny, but only a trespass, as they must be understood to mean, wood growing and not cut down, and therefore not the subject of larceny; and that, as there is no prefatory averment diverting the meaning to a felonious taking, the innuendo is too large, as it undertakes such diversion, which is beyond its function. On the other hand some claim is made that the subsequent words stand by themselves, and are not the reason of the former speech nor any diminution of it, but merely in addition to it.

It is true that when the actionable quality of the words arises from circumstances extrinsic of them, a prefatory averment is necessary, to show that such circumstances existed and to connect the words with them. But when the actionable quality inheres in the words themselves, and does not arise from extrinsic circumstances, no prefatory averment is necessary; the innuendo may then ascribe the meaning claimed, and it is for the jury to determine the truth of the innuendo, if the words are capable of the meaning ascribed. 1 Am. Lead. Cas. 4th ed. 140.

Here, we think, the actionable quality inheres in the words themselves, taken together, and that no extrinsic facts are necessary to develop the imputation of larceny. At one time, before Lord Holt's day, the rule in actions of slander was, that the words should be construed *in mitiori sensu*, the object being to discourage litigation. Afterwards, in some of the cases, it was said that the words should be taken *in malam partem*, the policy being to

afford legal remedy and thereby prevent violent redress. But the rule now is, that the words are to be taken in their plain and natural meaning, and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used and the ideas they are adapted to convey to those who heard them. That is to say, the ordinary signification of the words and the understanding of the hearers, fix the meaning in slander. 1 Am. Lead. Cas. 4th ed. 131.

Now the natural and most obvious meaning of the word *steal* is, the felonious taking of property, or larceny. But it may be qualified by accompanying words so as to show that such was not the meaning. Thus, to say of one, "He stole apples from my trees," imputes a trespass, not larceny, and the words are not actionable. Otherwise to say, "He stole apples from my bin." But the word "stealing" in the language here declared upon is not thereby qualified so as to take away the *prima facie* imputation of larceny, which the defendant may disprove by bringing forward matters of fact to show that such was not the imputation.

The stealing of wood from the lands and premises of the defendant is the imputation alleged. One definition of the word *wood* is, the hard substance of a tree or shrub as cut for use. This is its most common meaning. The old maxim is, *arbor dum crescit, lignum dum crescere nescit*; a tree while it grows, wood when it cannot grow, that is, when it is cut down. Thus, in *Minors* v. *Leeford*, Cro. Jac. 114, the court thought the words, "Thou hath stolen a tree," not actionable, for *arbor dum crescit*. While in *Lo* v. *Sanders*, Cro. Jac. 166, the words, "Thou hath stolen my wood," were held actionable, for *lignum dum crescere nescit*. "You stole my boxwood and I can prove it," are actionable, for they may be understood to impute felony. *Baker* v. *Pierce*, 2 Salk. 695, but better reported in 6 Mod. [23]. *Short's* case, Noy, 114, is this: "Thou hast stolen my timber," are

actionable, for they shall not be intended of trees growing, for, by the whole court, they are then timber trees. In *Drake* v. *Whitacre*, Style, 24, the words were, "Margaret Whitecre (innuendo the plaintiff) did steal my wood, and I will send her to Bridewell." After verdict for the plaintiff it was moved in arrest that the words were not actionable, for doubtful words as these ought to be taken *in mitiori sensu*, and wood here might be understood, standing wood, and not wood cut down, and so it could not be theft but a trespass. On the other side it was answered, that wood should be understood, wood cut down and not standing, and being coupled with the words, "Margaret Whitacre is a thief," which are felonious words, they should be interpreted equally felonious. *Ayre* v. *Higgins* was cited to prove it, where it was adjudged that the words, "He is a thief and hath stolen my corn," should be understood of corn cut down and not standing, and therefore actionable. *Rolle*, Justice, said it was a strong case that the action would lie, but he arrested judgment till it was moved again, when the court held that the first words were actionable, but whether, coupled with the other words, they were actionable, the court was divided, *Bacon* against the action and *Rolle* for it. In *Phillips* v. *Barber*, 7 Wend. 439, the words, "You have stolen my wood," were held actionable.

We hold, therefore, that the first count is good.

The second count is bad for duplicity. It declares upon three sets of words, spoken at different times on the same day to the same person concerning different subjects, namely, the plaintiff's habitual intemperance, his lack of riches with many creditors, and his knowing that certain boys in his care and control were accustomed to steal defendant's apples and not trying to stop them. The plaintiff's trade and business and his fitness therefor are not, as claimed, the subject of the words, though they may have been their object, although they are not connected therewith by averment nor implication. Whether it would

have been proper, had the different sets of words related to the same subject, to join them in one count, we need not decide. That was held proper in *Hoyt* v. *Smith*, 32 Vt. 304. But no case goes the length of holding that words spoken at different times, imputing different charges, can be thus joined.

It is claimed that this count is also defective, for that the words alleged are not actionable, there being no special damage alleged, unless they were spoken of the plaintiff in relation to his trade and business; and that in order to make them actionable on that account, it must be alleged that they were so spoken. But such an allegation is not necessary if the natural and reasonable tendency of the words is to injure the plaintiff in his trade and business. *Lumby* v. *Allday*, 1 C. & J. 301; *Miller* v. *David*, L. R. 9 C. P. at p. 125: 1 Am. Lead. Cas. 4th ed. 99. The count avers that before and at the time in question, the plaintiff owned and occupied a valuable place in Corinth, known as "Maplewood Farm," and that divers wealthy men of New York City had been and were used and accustomed to entrust and commit the care of their minor sons to him for the purpose of having them boarded and instructed by him at said "Farm" during the summer season, whereby he had made great gain and profit. The words alleged are, "When he could not suck his mother any more, he sucked the rum-bottle, and has been sucking it ever since." Innuendo that plaintiff was and is addicted to intemperance in the use of intoxicating liquor. "He brings these boys here, and he gets a high price for boarding them, and he pretends to be rich, but I can count twenty-five men in Cookville that he owes money to, and if he should die today there would not be a cent left to pay his debts." Innuendo that plaintiff is not a person of good credit among his neighbors. "These boys come up here year after year and steal my apples, and he knows it and does not try to stop it, but he won't bring them much longer." Innuendo that plaintiff allowed said boys, while under his control, to commit larceny.

Do these words, or any and which of them, have a natural and reasonable tendency to injure the plaintiff in his business of boarding and instructing said boys?

Bayley, B., said in *Lumby v. Allday*, above cited, that every authority he could find, either showed the want of some general requisite, as honesty, capacity, fidelity, etc., or connected the imputation with the plaintiff's office, trade, or business; and therefore he held that to say of a clerk of a gas company, "You are a fellow, a disgrace to the town, unfit to hold your situation for your conduct with strumpets," was not actionable, because the imputation did not imply any of the qualities that such a clerk ought to possess.

So to say of a stay-maker in his trade, that his business does not keep him, but the prostitution of a woman in his shop, is not actionable, for it was considered that the words did not touch him in his business, but were only a general imputation on his moral character. *Brayne v. Cooper*, 5 M. & W. 249.

But if the words impute some quality, the natural tendency of which is to impair the plaintiff's professional or business character, as insolvency to a merchant, or drunkenness or immorality to a clergyman, they are actionable, and there need be no colloquium of the profession or business. *Stanton* v. *Smith*, 2 Lord Raym. 1480; *Jones* v. *Littler*, 7 M. & W. 423; *Chaddock* v. *Briggs*, 13 Mass. 248.

Concerning the imputation of habitual intemperance, as to which the innuendo is good, it needs no argument to show that its natural tendency is to injure the plaintiff's character in respect to the business in which he was engaged, for it implies the want of sobriety, a quality that the keeper and teacher of boys ought to possess.

But such cannot be said to be the natural tendency of the words innuendoed to impute bad financial credit to the plaintiff among his neighbors, for they do not touch him in

his said business, nor imply the want of any quality that the conductor of such a business ought to possess. It is not like imputing insolvency or want of credit and respectability to one to whom, in the prosecution of his business, credit is of importance, for such an imputation would necessarily tend to injure him in his business; but here it does not appear that credit was of importance to the plaintiff, and the character of the business is not such as to imply it.

The words about the boys stealing apples are not actionable *per se*, as claimed, as amounting to a charge of "being privy and consenting to a larceny," for they are not susceptible of imputing criminal complicity in that matter. Neither a mere presence, nor presence combined with a refusal to interfere or with concealing the fact, nor a mere knowledge that a crime is about to be committed, nor a mental approbation of what is done, while the will contributes nothing to the doing, will create guilt. There must be something further, some word, or act, or, in the language of *Cockburn*, C. J., one to be a party in another's crime, "must incite, procure, or encourage the act." I Bishop's New Crim. Law, § 633.

But these words touch the plaintiff in his character of teacher, as they clearly import that he is not a suitable person to have the care and instruction of boys, because he is so indifferent to their moral welfare that he does not even try to restrain then from the commission of crime; and as they show on their face that they were spoken of him in said business, they are actionable, without colloquium of the business or the allegation of special damage.

The third count alleges that the plaintiff was engaged in buying and selling horses, cattle, sheep, and other live stock, and hay, grain, and other farm produce, and other articles, and that the defendant, contriving to injure him in that business, said of him that "he pretends to be rich, but I can count twenty-five people in Cookville that he owes

money to, and if he should die today there would not be a cent left to pay his debts." This language clearly imports that the plaintiff was insolvent, and it is actionable without colloquium of the business or allegation of special damage, as its natural and necessary tendency is to injure the plaintiff in said business, for although there is no averment that pecuniary credit and responsibility are of importance to him therein, yet it is of such a character that they necessarily must have been of importance to him, as much as they are to a merchant, and the precedents for imputing bankruptcy to a merchant or other trader do not contain such an averment. *But the declarations in some of the cases do; as, in *Lewis* v. *Hawley*, 2 Day. 495: 2 Am. Dec. 121, where it was held actionable, without special damage being proved, to say of a drover, whose business it was to buy cattle, drive them to market and sell them, that he was a bankrupt, and not able to pay his debts. 9 English Ruling Cases, 13. In *Davis* v. *Ruff*, Cheves's Law, 17: 34 Am. Dec. 584, it was held that words impugning the solvency of a person and affecting his credit, were actionable, though not spoken of him in relation to his trade or business. But there was an allegation of special damage.

The demurrer is general to all the counts by enumeration, and special to the second and third. It is equivalent, therefore, to separate demurrers to each count. This is important only as affecting the form of judgment.

The judgment that the first count is insufficient is reversed, the demurrer thereto overruled, and that count adjudged sufficient. The judgment that the second count is insufficient and the third count sufficient, is affirmed.

Both parties excepted, and the plaintiff has prevailed to the extent of obtaining a reversal as to the first count. This entitles him to costs in this court.

*Cause remanded.*