## GEORGE H. RICE *v.* HONOLULU STAR-BULLETIN, LIMITED, A CORPORATION.

### No. 1340.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT. HON. J. T. DeBOLT, JUDGE.

ARGUED OCTOBER 11, 1921.          DECIDED OCTOBER 22, 1921.

KEMP AND EDINGS, JJ., AND CIRCUIT JUDGE ROSS IN PLACE OF COKE, C. J., ABSENT.

LIBEL AND SLANDER—*words prejudicing one in his employment.*

.Words which impute to one unfitness to perform the duties of his employment or which have a tendency to prejudice him in such employment are libelous *per se.*

SAME—*same.*

To say of a railway and express agent that he assaulted two boys and cursed another boy who were at the station on business and that he abuses almost every boy who has business that brings him to the station has a tendency to prejudice him in his employment and is therefore libelous *per se.*

CORPORATIONS—*torts—pleading.* ·

It is sufficient to allege generally that the corporation committed a tort or did an act attributed to it without specifying the name of its officer or agent through whom it acted though it is common practice to state generally that it acted through an officer or agent.

#### OPINION OF THE COURT BY KEMP, J.

This case comes before this court on an interlocutory bill of exceptions. To the plaintiff's amended bill of complaint the defendant demurred upon the grounds

in substance that special damages are not alleged and the letter relied upon by plaintiff was not libelous *per se* nor was it properly alleged to have been made and published by the defendant or its agent thereunto properly authorized. The substance of the complaint was that plaintiff for three years last past has been employed by the Oahu Railway & Land Company as station agent at the station of Castner; that plaintiff as agent for said company as aforesaid was under the duty to and did at all times hereinafter mentioned receive the daily shipments of newspapers shipped by the defendant over the line of railway operated by the Oahu Railway & Land Company and delivered the same to the delivery boys hereinafter mentioned, employes of said defendant company, the plaintiff in so receiving the said shipments of said newspapers acting in the dual capacity as agent for the said Oahu Railway & Land Company and as agent for such purpose for the American Railway Express Company and that as such agent of said railway company and as the agent aforesaid (for said specific purpose) of said express company it was at all of said times the duty of the plaintiff not to interfere with or abuse the said delivery boys but to assist in the delivery to them of said newspaper shipments in such manner as to facilitate the prompt delivery of said newspapers to the customers of the defendant company; that said defendant now is and at all of the times hereinafter mentioned was engaged at Honolulu in the publication of a certain daily newspaper of general circulation throughout the Territory of Hawaii, to wit, the Honolulu Star-Bulletin, and in circulating and delivering the same among and to its various subscribers throughout said Territory of Hawaii; that during all the times hereinafter referred to the said defendant each and every week-day shipped large numbers of copies of said news-

paper to the station of Castner aforesaid for delivery to its subscribers in and about the said Castner and in the military post of Schofield within which the said Castner station is located; that said daily shipments were made by said defendant over the railway line of the said railway company, said shipments being made through the American Railway Express Company, a corporation doing business in said Honolulu and throughout the Territory of Hawaii and engaged in the general business of contracting for delivery of shipments of express matter and delivering same; that at all of the times hereinafter mentioned the defendant corporation in order to facilitate the said shipments and the delivery of said copies of said newspaper at said station at Castner employed one F. J. DeClercq as its agent to represent said defendant at Castner station aforesaid and at the said military post of Schofield; that among the duties of said DeClercq as such agent was the duty of employing and at all times keeping employed numerous delivery boys for receiving said copies of newspapers from the Oahu Railway & Land Company's trains and delivering the same among the defendant's subscribers; that further among the duties of the said DeClercq were the duties of establishing the various carrying routes to be followed by the said delivery boys at and near Castner and Schofield aforesaid, of assigning said delivery boys to said routes and preventing the interference with or abuse of the said delivery boys by any person or persons whomsoever and of maintaining discipline among said delivery boys in order that the delivery of said newspapers among the said subscribers might be facilitated and insured; that heretofore on to-wit the 15th day of November, 1920, in the City and County of Honolulu the defendant acting by and through its said agent, the said F. J. DeClercq, within the scope of his said

agency as aforesaid in endeavoring to prevent the alleged interference with and abuse of the delivery boys aforesaid in connection with their work in receiving and delivering said copies of said newspaper and endeavoring thus to promote the defendant's business and interests, falsely and maliciously and without legal excuse, and contriving wickedly and maliciously to injure the plaintiff in his good name and reputation and to prejudice and injure him in his said business as station agent for the Oahu Railway & Land Company as aforesaid and as the agent (for the specific purpose aforesaid) of the said American Railway Express Company, published of and concerning said plaintiff in his said capacity as agent for said two last named companies in a letter which defendant acting by and through its said agent, the said DeClercq, wrote, posted and sent to to-wit, C. C. Graves, he being the local superintendent of the said American Railway Express Company at Honolulu aforesaid, the following libelous and defamatory matter published of and touching the plaintiff in his said business and duties aforesaid, with intent to defame said plaintiff and to prejudice him in his said business or calling, namely:

"Schofield Barracks, H. T., Nov. 15, 1920.
"Mr. C. C. Graves, Supt.,
American Railway Express Co.,
Honolulu, H. T.
"Dear Sir:

"The following is in accordance with your request of Friday last that I put in writing the complaint I made to you of Mr. George Rice," (meaning this plaintiff) "Station Agent at Castner, in regard to his abuse of the Star-Bulletin delivery boys:

"This complaint, as you will know, was made to you instead of the Oahu Railway & Land Company because the papers" (meaning thereby the copies of said newspaper published and circulated by the defendant as afore-

said). "are delivered by the American Railway Express Company, and any dealings with the Agent" (meaning thereby this plaintiff, as agent for said Oahu Railway & Land Company) "at that point are more or less dealings with the Agent" (meaning thereby this plaintiff as agent, for the specific purposes aforesaid, of the American Railway Express Company) "of the American Railway Express Company than of the Oahu Railway & Land Company.

"One day recently, in the presence of several witnesses, whose names are Robert Sutton, Carl Oleckna, Arthur Alana, and one other whose name can be furnished, Mr. Rice" (meaning this plaintiff) "struck William Harkins full in the face because he happened to cross in the path of Mr. Rice" (again meaning this plaintiff).

"Friday, November the 12th, William Harkins came to the depot in the performance of his duties" (meaning thereby the performance of the said Harkins' duties in connection with receiving and delivering copies of defendant's said newspaper, as delivery boy as aforesaid) "and upon his arrival there saw that a keg of R. R. spikes had been overturned. Having nothing else then to do he set about to pick them up. Mr. Rice" (meaning the plaintiff) "came out of the station, saw him picking up the spikes, accused him of upsetting the spikes and was about to strike him when the lad protested his innocence. Mr. Rice" (meaning this plaintiff) "then called him a God damned liar and cursed him, using names not fit to be used in the presence of a youngster of his age, much less to him.

"William Harkins is the nine-year-old son of Chaplain Harkins of the 3rd Engineers, and is one of the best known, best liked and best behaved youngsters in Schofield Barracks. Most of the officers and their families know this boy and will vouch for him, including, I believe, General Kuhn. And if this boy's parents knew the abuse their son was subject to while at the R. R. depot they would never allow him in that vicinity again. I have promised the boy that I would take steps to have Mr. Rice" (meaning this plaintiff) "restrained from further

abuse if he would not tell his parents, for the present at least.

"On another day recently, Mr. Rice" (meaning this plaintiff) "struck Carl Oleckna full in the stomach because the boy got in his way while pulling his paper bag from under the freight depot, where they were accidentally thrown by the baggage man. I arrived immediately afterwards and each boy there" (meaning thereby each of the said delivery boys, hereinabove mentioned, who were then and there present in connection with their said duties) "testified to what this boy told me, which is as I have given it to you here.

"Nearly every boy" (meaning thereby nearly every one of said delivery boys) "that has business that brings him to the station at Castner can testify to abuse that he at some time or other has been subject to by Mr. Rice" (meaning this plaintiff). "These boys can be met there at or about four o'clock of any week day, and questioned by any one who wishes to test the veracity of this report.

"It is very difficult as it is to secure delivery boys, and actions of this kind on the part of Mr. Rice" (meaning this plaintiff) "certainly will not help to remedy the situation. I am sure that Major Dannemiller, Captain Kinnard, Chaplain Harkins, or others, whose sons are now carrying routes for the Star-Bulletin, will not allow their sons in that vicinity if they learn what has already happened to other boys.

"Trusting that some steps will be taken to restrain Mr. Rice" (meaning this plaintiff) "from further abusing any delivery boys, and thanking you in advance for any attention you give this matter, I am,

        "Very truly yours,
      (Signed)  "F. J. DeClercq,
          "Schofield Representative,
            "Star-Bulletin."

that said C. C. Graves did duly, on the 16th day of November, 1920, receive said letter through the mails and did read the same as it was intended by said agent of defendant that he should; that the defendant further on the 15th day of November, 1920, acting by and through

its said agent, the said F. J. DeClercq as aforesaid, maliciously with the intent to injure and defame this plaintiff and to prejudice him and injure him in said business or calling, published and circulated the libelous and defamatory matter aforesaid (defaming and disparaging plaintiff in his said business or calling aforesaid) by posting in the mails a complete and exact copy of said letter aforesaid to General Joseph E. Kuhn, in immediate command and control of the United States military post at Castner aforesaid, and to Wallace R. Farrington, vice-president and general business manager of said defendant at Honolulu aforesaid, and both the said General Joseph E. Kuhn and the said Wallace R. Farrington did duly on the 15th day of November, 1920, receive said copies of said letter through the mails and read the same as it was intended by said agent of defendant, the said F. J. DeClercq, that they should. It is next alleged that the matters and things in said letter set forth are "in each and every particular absolutely false." It is also alleged that on the 23d day of November, 1920, the plaintiff wrote a letter to the defendant setting out fully all of the different matters and citing evidence and proofs that said defamatory matter was and is utterly libelous and false and requesting and insisting that the defendant should forthwith retract the false and libelous matter and charges aforesaid, but the defendant, although having received and read plaintiff's said letter, and well knowing that the defamatory matters and charges in said letter are utterly libelous and false, nevertheless has, through malice, refused and does now refuse to retract the same. The complaint concludes with a prayer for judgment against the defendant in the sum of $10,000. The demurrer was sustained, the circuit judge holding that the letter was not libelous *per se* and was neither written nor

published by Mr. DeClercq within the scope of the alleged agency.

To the decision and order sustaining the demurrer the plaintiff excepted and was allowed his interlocutory bill of exceptions which is now before this court.

If the circuit judge was right in either of his conclusions the exception will have to be overruled since special damages are not alleged. One of plaintiff's contentions is that the letter in question is libelous *per se* as having a tendency to injure him in his employment. Defendant admits that a libel which has a tendency to injure one in his office, profession, calling or trade is libelous *per se,* but argues that the letter in question has no such tendency. The letter complained of contains direct and unmistakable language which shows that its intent and purpose was to attack the conduct of Mr. Rice in his employment. "I put in writing the complaint I made to you of Mr. George Rice, station agent at Castner, in regard to his abuse of the Star-Bulletin delivery boys. This complaint * * * was made to you * * * because the papers are delivered by the American Railway Express Company, and any dealings with the agent at that point are more or less dealings with the agent of the American Railway Express Company than of the Oahu Railway & Land Company." This is a direct statement of the purpose of making the complaint—that is, as Mr. Rice was acting as the agent of the American Railway Express Company in receiving the papers, it was proper that any complaint made of him in his capacity as agent should be made to that company. The letter also very carefully shows that the boys who are alleged to have been abused by Mr. Rice were at the depot in the performance of their duties as carriers of the paper and the complaint alleges that as agent it was the duty of the plaintiff not to interfere with or abuse said delivery boys but to assist in

delivering to them the said newspaper shipments. The letter further states: "Nearly every boy that has business that brings him to the station at Castner can testify to abuse that he at some time or other has been subject to by Mr. Rice." These allegations together with the charge of specific assaults and other abuse of delivery boys while at the station on business constitute a clear charge of a violation of the duty which the complaint alleges Mr. Rice owed his employers.

In *Wilson* v. *Cotterman,* 65 Md. 190, 3 Atl. 890, it is said that the actionable character of the language must be tested by the question whether it imputes to the plaintiff the want of any qualification such as a clerk ought to have, or any misconduct which would make him unfit to discharge faithfully and correctly the duties of clerk. In *Darling* v. *Clement,* 69 Vt. 292, where the plaintiff kept a school for boys, the court held it libelous *per se* to accuse him of sucking a rum bottle and failing to prevent the boys stealing apples. The court said the natural and reasonable tendency of the words was to injure plaintiff in his trade and business. In *Williams* v. *Davenport,* 42 Minn. 393, 44 N. W. 311, 18 Am. St. Rep. 519, the alleged libel referred to "the ungentlemanly and discourteous conduct" of a member of a theatrical party. The complaint alleged that the words were used concerning plaintiff in his professional character and that courtesy and gentlemanly conduct are especially necessary to the pursuit of his calling. The complaint was held to be good and the publication libelous in fact. In *Hrdlicka* v. *Warner,* 175 N. W. (Minn.) 299, the plaintiff was a rural mail carrier and the defendant wrote a letter to the Post-office Department complaining that plaintiff threatened boys of draft age that if they joined the nonpartisan league they would be sent to France. The court said: "The court charged the jury that the letter was libelous

*per se.* We hold that it was so. It charged the mail carrier with forbidden activities in the course of his official duties. It was necessarily injurious to him in his calling." In *Adams* v. *Cameron,* 27 Cal. App. 625, the plaintiff was a railroad conductor and the defendant wrote a letter to the general passenger agent of the railroad company in which he charged the conductor with being so under the influence of liquor while on duty as to cause him to use loud and vulgar language toward the passengers. It was held that this charge was calculated to injure him in his occupation and was libelous *per se* although in that case special damages were alleged and proved. In *Spears* v. *McCoy,* 155 Ky. 1, 159 S. W. 610, 49 L. R. A. (N. S.) 1033 at 1034, the words spoken of a teacher were that he dismissed the boys, kept the girls after school, gave them candy and courted them. We quote the following from the opinion in that case as especially applicable here: "While it is true that the words in question do not impute the commission of a crime involving moral turpitude, for which plaintiff might be indicted and punished, the question is: Do they fall under either the third or fourth class; that is do they impute to plaintiff unfitness to perform his duties in his office as teacher, or do they prejudice him in his profession of teacher? It is clear that the words were spoken of him not in his individual capacity, but in his capacity as a teacher. The charge is that he dismissed the boys, kept the girls in, gave them candy, and courted them. Naturally the patrons of a school would not want such a teacher. They send their young daughters there to be instructed, not to be courted. A teacher who indulges in such a practice would not be acceptable to the patrons, and could not long continue in office. The charge is not only sufficient to show unfitness, but to discredit his standing in his profession. We therefore conclude that

the words are actionable. It is insisted, however, that not only were no special damages alleged, but that, as the petition shows that the plaintiff has again been employed to teach the same school, the petition fails to show that he has been damaged at all. In answer to the first contention it is sufficient to say that where the words spoken impute unfitness to perform the duties of the office or employment, or prejudice him in his profession or trade, they are actionable *per se,* and it is not necessary to allege and prove special damages. * * * Nor is the fact that he has been already employed for the coming year conclusive of the question of damages. Notwithstanding this employment, he may be discharged or be otherwise discredited in his profession. It follows that the trial court should have overruled the demurrer to the petition."

Tested by the principles announced in these decisions we think it must be held that the letter in question is libelous *per se.* A station agent who abuses almost every boy "that has business that brings him to the station" is certainly unfit to perform the duties of his employment. Naturally the railroad officials would not want such an agent. They employ station agents to wait upon and assist those who call at the station on business and not to assault or otherwise abuse them. The charges contained in the letter are sufficient if true to show unfitness to perform the duties which plaintiff is employed to perform and therefore have a tendency to prejudice him in his employment.

The conclusion above reached renders it unnecessary for us to consider the argument that the letter is libelous *per se* as imputing to plaintiff the commission of a crime involving moral turpitude and also that it is libelous *per se* as holding him up to scorn and ridicule and to feelings of contempt and execration.

We have only to consider now whether the libel is

properly alleged to be that of the defendant.  The allegation of the complaint is that "the defendant acting by and through its said agent, the said F. J. DeClercq, within the scope of his said agency as aforesaid in endeavoring to prevent an alleged interference with and abuse of the said delivery boys in connection with their work in receiving and delivering said copies of said newspaper and endeavoring thus to promote said defendant's business and interests, falsely and maliciously and without legal excuse * * * published of and touching the plaintiff in his said business. and duties aforesaid," etc.  Thus it appears that the complaint instead of alleging the publication to be the personal act of F. J. DeClercq distinctly charges that the libel was made and published by the defendant company, adding as an explanation the manner in which it was published, namely, through defendant's duly authorized agent F. J. DeClercq acting within the scope of his authority and for the purpose of furthering defendant's business.  We know of no better way in which it can be alleged that a given act is the act of a corporation and whether or not the allegation can be proved the demurrer admits the truth of the facts alleged.  For the purpose of the demurrer therefore we must consider as admitted, first, that the defendant made and published the libel, and second, that it did so through the agency of F. J. DeClercq, its duly authorized agent, acting within the scope of his employment and for the purpose of furthering defendant's business.  "It would seem that there is no longer any question that a corporation may be required to respond in damages for a libel written and published by its servant, when such writing and publication by the servant took place while he was engaged in prosecuting the master's business and was acting in the course and scope of his employment even though it did not expressly authorize or in any way ratify the libel, but so far from

thus doing, actually repudiated it." (5 Fletcher Cyc. Corp. Sec. 3347. See also *Washington Gas-Light Co.* v. *Lansden,* 172 U. S. 534, 544.) "A corporation may be held liable for a libel published by its officer acting within the scope of his authority, and it cannot be said that the testimony furnished no ground for an inference that P. M. Maloney in writing and publishing the letter was acting within the scope of his authority. The conclusion reached by the jury upon the whole evidence may not be the correct one, but the question was one of fact." (*Hardoncourt* v. *N. Penn Iron Co.,* 225 Pa. 379, 381, 74 Atl. 243.) "It is sufficient to allege generally that the corporation made or executed an instrument or committed a tort or did an act attributed to it without specifying the name of its officer or agent through whom it acted or even that an agent acted at all in the matter. Indeed it is said to be better pleading to omit all reference to the agency through which the act was done though it is common practice to state generally that it was done by an officer or agent." (4 Fletcher Cyc. Corp. Sec. 3055.) "It is insisted by counsel for the defendant coal company that its demurrer to the declaration should have been sustained because of the failure to aver that P. A. Grady was its agent. No such averment was necessary. The declaration does aver, 'that the said defendants P. A. Grady and the Davy-Pocahontas Coal Company, through its officer, agent, representative and employee, P. A. Grady, conspiring,' etc. This was sufficient to inform defendant company that the wrong complained of was committed by it through one of its agents. Being a corporation it could act only through its agents and officers. The familiar maxim *qui facit per alium facit per se* applies. The demurrer was properly overruled." (*Lyons* v. *Coal Co.,* 75 W. Va. 739, 743, 84 S. E. 744.)

We conclude that the circuit judge erred in both of

his conclusions, namely, that the letter was not libelous *per se* and that it was not made and published by the defendant or its agents thereunto properly authorized.

The exception therefore is sustained.

*Marguerite K. Ashford (W. B. Lymer* with her on the brief) for plaintiff.

*U. E. Wild (Frear, Prosser, Anderson & Marx* on the brief) for defendant.