**Willis P. BUTLER et al., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

**Civ. No. 73–3767.**

United States District Court,
D. Hawaii.

Nov. 8, 1973.

David A. Johnson, American Civil Liberties Union, Honolulu, Hawaii, for plaintiffs.

William C. McCorriston, Asst. U. S. Atty., Harold M. Fong, U. S. Atty., Honolulu, Hawaii, for defendants.

SAMUEL P. KING, District Judge.

Plaintiffs' complaint arose out of incidents that took place at Hickam Air Force Base on August 30, 1972. On that date, President Nixon arrived at the base aboard Air Force One. The announced purpose of the visit was to meet Premier Tanaka of Japan, who arrived at the base later that day.

The public was invited to greet these officials. With respect to the President, White House press aide Tim Elbourne released the news which was duly reported in the local newspapers. An August 29, 1972, morning Honolulu Advertiser story, headlined "Public Can Greet President", stated in part:

"The gates to Hickam Air Force Base will be open to the public tomorrow so that Hawaii residents can greet President Richard M. Nixon when he arrives at about 4:30 p. m. . . .

"Hawaii Republicans are planning a reception at Hickam with a brass band, hula girls and Hawaiian singers. The party is making a phone canvass to get people out to greet the President. . . .

"The White House aide said no efforts will be made to keep protesters away from the public welcoming ceremony but he said Hickam guards will determine who gets in and will maintain some security regulations.

"The President is expected to make a brief address to the audience greeting him. . . ."

Plaintiffs went to Hickam "to demonstrate . . . in a peaceful and law-abiding manner their opposition to Nixon's Vietnam war policies and his campaign for re-election by displaying signs expressing their views." They gathered at a parking lot on the University of Hawaii Manoa campus, and proceeded to Hickam in three cars—Car A,[1] Car B,[2] and Car C.[3]

Car A was driven onto the base and to a parking place without incident. Plaintiffs-Car A, with their signs, left the car and walked to a gate leading to the public stands. Air Force personnel stopped and held these plaintiffs at this gate, escorted them with their car to a military security building where Plaintiffs-Car A were detained for about 1½ hours, fingerprinted, photographed, and issued individual bar letters,[4] and thereafter released.

Car B was driven onto the base without incident but was stopped before it reached the parking lot by Air Force personnel who then escorted Car B and occupants to the same military security building where Plaintiffs-Car B were detained for about 1½ hours, fingerprinted, photographed, and issued individual bar letters,[5] and thereafter released.

Car C was stopped at the entrance to the base by Air Force personnel and the occupants were denied admittance. The car was then parked outside the Hickam main gate, and Plaintiffs-Car C walked up and down in the vicinity carrying "protest" signs.

Plaintiffs allege seven causes of action.

Defendants Paxton and John Does I through VII [6] move to dismiss or in the alternative for summary judgment.

1. Plaintiffs in Car A (abbreviated to Plaintiffs-Car A) were Willis Butler, Gregory King, and Noel J. Kent. Also in Car A was Defendant John Doe I (see note 6).

2. Plaintiffs in Car B (abbreviated to Plaintiffs-Car B) were Benedict J. Kerkvliet, Melinda T. Kerkvliet, and Marian D. Morgan. There was another occupant of Car B who is not a plaintiff herein.

3. Plaintiffs in Car C (abbreviated to Plaintiffs-Car C) were Isaac Jai Pleskacz, Oliver M. Lee, and David W. Johnson. There were two other occupants of Car C who are not plaintiffs herein.

4. By a "bar letter" is meant a form letter issued to an individual barring that individual from entering a military installation. In this case, the letters were dated August 30, 1972, signed by Defendant Paxton as base commander, addressed individually to each of Plaintiffs-Car A and Plaintiffs-Car B, and except for the named individual, read as follows:

Subject: Order Not To Enter or Reenter Military Reservation
To: (Named individual)
1. You are being removed as a trespasser from Hickam Air Force Base, a military reservation, and ordered not to enter or reenter the confines of any Air Force Installation on the Island of Oahu without the written permission of the Commander or an officer designated by him to issue a permit of reentry.
2. Your attention is invited to 18 U.S.C. 1382, entitled: Entering Military, Naval or Coast Guard Property, which states:
"Whoever, within the jurisdiction of the United States, goes upon any military, naval or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation; or whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station or installation after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof shall be fined not more than $500 or imprisoned not more than six months or both. June 25, 1948—C. 645, 62 Stat. 765."
At the bottom of each letter was a certification by Mary L. Spears, Sgt. USAF, that she had given the original of the letter to the addressee on August 30, 1972.

5. See note 4, *supra*.

6. John Doe I is alleged to have been an undercover agent who went along with plaintiffs and reported on their activities; he has not been identified and the federal officials claim not to know who he is.
John Doe II is alleged to have been the highest ranking member of the Air Force personnel present at the scene when Plain-

*First and Second Cause of Action*

The first cause of action is brought under the U.S. Constitution and 28 U.S.C. § 1331 by Plaintiffs-Car A and Plaintiffs-Car B for money damages (punitive and exemplary) against Defendants Paxton and John Does I through V for violation of their First, Fourth and Fifth Amendment constitutional rights.

The second cause of action is brought under the U.S. Constitution and 28 U.S.C. § 1331 by Plaintiffs-Car C for money damages (punitive and exemplary) against Defendants Paxton and John Does I through V for violation of their First and Fifth Amendment constitutional rights.

■ Plaintiffs-Car A and Plaintiffs-Car B allege facts regarding violations of their Fourth Amendment constitutional rights which bring them within the principles of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[7] All Plaintiffs allege violations also of their Fifth and First Amendment constitutional rights. In United States ex rel. Moore v. Koelzer, 457 F.2d 892 (3rd Cir. 1972), it was

held that the *Bivens* rationale extended to damages for violations of Fifth Amendment rights to a fair trial. I agree with Plaintiffs that the irresistible logic of *Bivens* leads to the conclusion that damages are recoverable in a federal action under the Constitution for violations of First Amendment rights.

As Judge Scott pointed out in Washington v. Brantley, 352 F.Supp. 559, 563–564 (M.D.Fla.1972) (dictum):

"It seems reasonably clear that *Bivens* may have sought to impose liability against federal officials for the same acts which Congress has heretofore imposed liability against State officials. . . . However, in reaching this holding, the Court reasoned in such a manner that it may be argued, notwithstanding the *ratio decidendi* of the case, that *Bivens* recognizes a cause of action for damages for violation of *any* constitutionally protected interest. . . ."

■ First Amendment rights are no less important than Fourth Amendment or Fifth Amendment rights. They are, in fact, historically interrelated.[8] The

---

tiffs-Car A were first detained; he is identified as Gerardo Olivarez, T/Sgt. USAF.

John Doe III is alleged to have been the highest ranking member of the Air Force personnel present at the scene when Plaintiffs-Car B were first detained; he is identified as Essie H. Ellis, Sgt. USAF.

John Doe IV is alleged to have been the highest ranking member of the Air Force personnel present at the security building where Plaintiffs-Car A and Plaintiffs-Car B were detained, photographed, and fingerprinted; he is identified as Roy E. Glover, M/Sgt. USAF.

John Doe V is alleged to have been the highest ranking member of the Air Force personnel present at the scene when Plaintiffs-Car C were denied entrance to the base; he is identified as Thomas J. Murphy, Maj. USAF.

John Does VI and VII are identified as officers of United States Government agencies maintaining records concerning Plaintiffs in connection with the events recited. They are identified as only one person, Horace H. Look, Capt. USAF.

Defendant Wilmot E. Y. Paxton, Col. USAF, is Commander 15th Air Base Wing

and, as such, also Base Commander Hickam Air Force Base.

7. The Ninth Circuit, relying upon Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), anticipated *Bivens* by 13 years. *See* Wheeldin v. Wheeler, 280 F.2d 293 (9th Cir. 1960), rev'd (on other grounds), 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963).

8. *See* Stanford v. Texas, 379 U.S. 476, 484–485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965), quoting approvingly from Justice Douglas' dissenting opinion in Frank v. Maryland, 359 U.S. 360, 376, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), to the effect that:

"The commands of our First Amendment (as well as the prohibitions of the Fourth and the Fifth) reflect the teachings of Entick v. Carrington, . . . [19 How.St.Tr. 1029 (1765)]. These three amendments are indeed closely related, safeguarding not only privacy and protection against self-incrimination but 'conscience and human dignity and freedom of expression as well'."

progression of cases which have read the First Amendment into the Fourteenth Amendment did so by finding the First Amendment freedoms to be personal liberties protected by the due process clause of the Fourteenth Amendment.[9] The same incorporation took place in the federal area.[10] Thus protection of First Amendment rights through the Fifth Amendment against federal action rests on the same Constitutional imperatives as through the Fourteenth Amendment against state action.[11]

It may be argued that *Bivens* merely recognized the practical convenience of permitting an original action in federal court in a situation where a state tort action could be brought but would usually be removed to the federal court, whereas there are no parallel state tort actions in the area of First Amendment rights. *Bivens* "rejected the notion that the Fourth Amendment proscribes only such conduct as would, if engaged in by private persons, be condemned by state law." (at page 392 of 403 U.S., at 2002 of 91 S.Ct.).

■ In actions under 42 U.S.C. § 1983, compensatory and punitive damages are recoverable for deprivations of First Amendment rights by persons acting under color of state law.[12]

There are no special difficulties in applying similar standards and principles to damage actions against federal officials under the First and Fifth Amendments. Contrariwise, applying different standards to federal and state officials creates unnecessary difficulties.[13]

Where the occasion for exercising First Amendment rights has passed, a private damages action affords the only practicable means of redressing the kind of wrong alleged.[14] And as Justice Har-

---

9. *See* Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925) (dicta), as to freedom of speech and freedom of the press; Fiske v. Kansas, 274 U.S. 380, 47 S. Ct. 655, 71 L.Ed. 1108 (1927), as to freedom of speech; Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), as to freedom of the press; DeJonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937), as to freedom of assembly; Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 589, 84 L.Ed. 987 (1940), as to freedom of religion.

10. As was said by Judge Hall in United States v. Korner, 56 F.Supp. 242, 246–247 (S.D.Cal.1944):
"It must be regarded as settled that each liberty specified in the First Amendment of the Constitution is a liberty which is secured by the due process clause of the Fifth Amendment to all persons without regard to citizenship. . . . "

11. *See* Bolling v. Sharpe, 347 U.S. 497, 499–500, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954), where Chief Justice Warren said:
" . . . The Fifth Amendment . . . does not contain an equal protection clause as does the Fourteenth Amendment . . . But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive. The 'equal protection of the laws' is a more explicit safeguard of prohibited unfairness than 'due process of law,' and, therefore, we do not imply that the two are always interchangeable phrases. But . . . discrimination may be so unjustifiable as to be violative of due process. . . .
"Although the Court has not assumed to define 'liberty' with any great precision, that term is not confined to mere freedom from bodily restraint. Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective. . . ."

12. *See* Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and as reported in the lower court as Sindermann v. Perry, 430 F.2d 939 (5th Cir. 1970); Smith v. Cremins, 308 F.2d 187 (9th Cir. 1962); Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968); Fulton v. Emerson Electric Co., 420 F.2d 527 (5th Cir. 1969); Donovan v. Reinbold, 433 F.2d 738 (9th Cir. 1970); Winters v. Miller, 446 F.2d 65 (2d Cir. 1971); Davis v. Board of Trustees of Arkansas A & M College, 270 F.Supp. 528 (E.D.Ark.1967), aff'd, 396 F.2d 730 (8th Cir. 1968).

13. *See* Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), reversed sub nom. District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). *Compare* Bethea v. Reid, 445 F.2d 1163 (3rd Cir. 1971).

14. See dissenting opinion of Justice Brennan in Wheeldin v. Wheeler, 373 U.S. 647, 662, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963).

lan said in his concurring opinion in *Bivens:*

> "Initially, I note that it would be at least anomalous to conclude that the federal judiciary—while competent to choose among the range of traditional judicial remedies to implement statutory and common-law policies, and even to generate substantive rules governing primary behavior in furtherance of broadly formulated policies articulated by statute or Constitution . . . is powerless to accord a damages remedy to vindicate social policies which, by virtue of their inclusion in the Constitution, are aimed predominantly at restraining the Government as an instrument of the popular will." (at pages 403–404 of 403 U.S., at 2008 of 91 S.Ct.).

■ With respect to the amount-in-controversy requirement of 28 U.S.C. § 1331, this court agrees with the discussion of this matter by Judge Peckham in CCCO–Western Region v. Fellows, 359 F.Supp. 644, 647–648 (N.D.Cal.1972), and holds that, in the light of the factual allegations of the complaint, it does not appear to a legal certainty that the claim of any Plaintiff is really for less than the jurisdictional amount.[15]

McGaw v. Farrow, 472 F.2d 952 (4th Cir. 1973) is distinguishable. There plaintiffs "admitted such allegations did not relate to actual damages, only to 'symbolic damages' incapable of being measured 'in terms of dollars and cents'." The alleged deprivation of constitutional rights consisted of a military base commander's denial of an application to use the base chapel's facilities for a religious memorial service for all Indo-China war dead. It would appear from this appellate court opinion that plaintiffs did not even allege any amount-in-controversy.

There is ample authority for the proposition that removal or exclusion from Hickam under the circumstances could have resulted in actionable deprivations of constitutional rights.[16]

*Third Cause of Action*

The third cause of action is brought under 42 U.S.C. § 1985(3) and 28 U.S.C. §§ 1343(1) and 1343(2) by all Plaintiffs for money damages (punitive and exemplary) against Defendants Paxton and John Does I through V for conspiracy to deprive them of the equal protection of the laws and of equal privileges and immunities under the laws, and to prevent them, by force, intimidation and threat, from giving their "advocacy in a legal manner concerning the election of a lawfully qualified person as President of the United States." There is also an allegation setting up a 42 U.S.C. § 1986 action against Defendant Paxton as one who, having "knowledge that personnel under his command would commit the wrongs described . . . failed to aid in preventing and failed to prevent these wrongs . . . ."

Defendants rely upon certain Ninth Circuit cases for the proposition that 42 U.S.C. § 1985(3) reaches only conspiracies under color of state law, citing Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959), from which flowed Koch v. Zuieback, 194 F.Supp. 651 (S.D.Cal. 1961), aff'd, 316 F.2d 1 (9th Cir. 1963). Defendants cited also Norton v. McShane, 332 F.2d 855 (5th Cir. 1964). But *Hoffman* relied upon Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L. Ed. 1253 (1951), and since Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the authority of *Collins,* and hence of *Hoffman,* must be considered of historical value only.

In *Griffin,* the Supreme Court held specifically that:

> ". . . all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985

---

15. *See* Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658 (5th Cir. 1971); Murray v. Vaughn, 300 F.Supp. 688 (D.R.I. 1969). *But see* Burnett v. Tolson, 474 F.2d 877, 878–879 and footnote 4 (4th Cir. 1973).

16. *See* Flower v. United States, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972); Burnett v. Tolson, *supra.*

(3)'s coverage of private conspiracies. That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe . . . 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State.' . . . The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.[9] The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.[10] " at pages 101–102, 91 S.Ct. at page 1798.

Mr. Justice Stewart's footnotes 9 and 10 on page 102, 91 S.Ct. on page 1798 are relevant to the issue before this court.

"9. We need not decide, given the facts of this case, whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the portion of § 1985(3) before us. Cf. Cong. Globe, 42d Cong., 1st Sess., 567 (1871) (remarks of Sen. Edmunds).

"10. The motivation requirement introduced by the word 'equal' into the portion of § 1985(3) before us must not be confused with the test of 'specific intent to deprive a person of a federal right made definite by decision or other rule of law' articulated by the plurality opinion in Screws v. United States, 325 U.S. 91, 103, 65 S. Ct. 1031, 89 L.Ed. 1495, for prosecutions under 18 U.S.C. § 242. Section 1985(3), unlike § 242, contains no specific requirement of 'wilfulness.' Cf. Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492. The motivation aspect of § 1985(3) focuses not on scienter in relation to deprivation of rights but on invidiously discriminatory animus."

■ We need not concern ourselves here with the type of "individually discriminatory animus" with which defendants allegedly acted. The portion of 42 U.S.C. § 1985(3) upon which plaintiffs rely does *not* require a deprivation or denial of equal protection or of equal privileges and immunities.[17] Thus, the gloss placed on the reinterpretation of the first portion of the statute by *Griffin* is inapplicable to this case, and all that is left is *Griffin's* revision of *Collins,* under which plaintiffs have alleged a cause of action under 42 U.S.C. § 1985(3).

17. *Griffin* dealt with those portions of 42 U.S.C. § 1985(3) up to the second semi-colon, which read:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . ."

The statute continues:

" . . . or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; . . . ."

*Fourth Cause of Action*

The fourth cause of action is brought under the U.S. Constitution and 28 U.S.C. § 1346(a)(2) by all Plaintiffs for money damages against Defendant United States of America for the actions of its agents, servants, and employees acting within the scope of their employment.

■ To Plaintiffs' argument that the United States government may be sued for money damages on the theory of respondeat superior under 28 U.S.C. § 1346(a)(2), the short answer is that the United States has not consented to be so sued.[18] References to "tort" actions should not be taken too literally. The *Bivens* court defined a cause of action under the Fourth Amendment that had not been recognized before. To read into existing statutes, enacted at a time when this new action did not exist, sovereign consent to be a defendant in such an action is impermissible. As was said by Chief Judge Lumbard in Phillips v. United States, 346 F.2d 999 (2d Cir. 1965), at page 1000:

"Here, as in many cases, the answer to the question of statutory interpretation depends on the spirit in which it is approached. Unfortunately for the plaintiff, the spirit proper to judicial consideration of a waiver of sovereign immunity is not one of generosity and broad interpretation. . . ."

*Fifth Cause of Action*

The fifth cause of action is brought under the U.S. Constitution and Rule 57, F.R.Civ.P., and 28 U.S.C. § 2201 for a declaratory judgment that the bar letters issued to Plaintiffs-Car A and Plaintiffs-Car B are of no legal effect and void or that the 18 U.S.C. § 1382 notices contained in said letters are un-constitutional as applied to these Plaintiffs as arbitrarily imposing the threat of criminal penalty solely on account of their attempts to exercise their First Amendment constitutional rights. Plaintiffs concede that jurisdictional allegations for the fifth cause of action are deficient and represent that they will amend to add a reference to 28 U.S.C. § 1331 and a claim that the amount in controversy exceeds $10,000.

■ This "cause of action" could well have been combined with another cause of action. As stated by Judge Peckham in CCCO–Western Region v. Fellows, *supra*, at page 648 of 359 F.Supp., "28 U.S.C. §§ 2201, 2202 do not confer, of themselves, jurisdiction on this court. . . . Jurisdiction having been found elsewhere, however, relief in the form of a declaratory judgment, if appropriate, is available." Here, jurisdiction is found under 28 U.S.C. § 1331 and under 28 U.S.C. § 1361, and if the facts alleged by plaintiffs are established, a declaratory judgment as prayed for might be appropriate.[19]

*Sixth Cause of Action*

The sixth cause of action is brought under the U.S. Constitution and 28 U.S.C. §§ 1331 and 1361 for an order compelling Defendant Paxton to cancel and rescind the bar letters issued to Plaintiffs-Car A and Plaintiffs-Car B, and compelling Defendants Paxton and John Does VI and VII in their official capacities to destroy all fingerprints, photographs, copies of letters, records, and information gathered concerning all Plaintiffs in connection with the incidents of August 30, 1972.

■ Recently enacted 28 U.S.C. § 1361 authorizes this court to grant the kind of relief sought by plaintiffs.[20]

18. *See* Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108 (1894); Basso v. United States, 239 U.S. 602, 36 S.Ct. 226, 60 L.Ed. 462 (1916); Broome v. Simon, 255 F.Supp. 434 (W.D.La.1965); Kiiskila v. United States, 466 F.2d 626 (7th Cir. 1972); Monarch Insurance Co. of Ohio v. District of Columbia, 353 F.Supp. 1249 (D.D.C. 1973).

19. *See* Kiiskila v. Nichols, 433 F.2d 745 (7th Cir. 1970).

20. *See* Cortright v. Resor, 325 F.Supp. 797, 811–812 (E.D.N.Y.1971), rev'd—on other

But defendants assert that all fingerprints and photographs have been destroyed and that no copies of the files on Plaintiffs or of the information in the files were reproduced or distributed prior to this destruction, which moots this cause of action in part.

Plaintiffs counter with the obvious rejoinder that they are not required to accept counsel's unsubstantiated assertions but should be permitted sufficient discovery or provided sufficient proof to satisfy themselves or the court of these facts. There remains also the issue of the cancellation and rescission of the bar letters.

*Seventh Cause of Action*

The seventh cause of action is a libel action addressed to this court's pendent jurisdiction by Plaintiffs-Car A and Plaintiffs-Car B for damages in the amount of $1,000 each against Defendant Paxton based on the bar letters.

■ Hawaii recognizes a distinction between libel *per se* and libel *per quod* and the necessity for an innuendo and special damages for the latter to be actionable. Kahanamoku v. Advertiser, 25 Hawaii 701, 709–712 (1920). Russell v. Am. Guild of Variety Artists, 53 Hawaii 456, 497 P.2d 40 (1972), repeats the *Kahanamoku* classifications of libels *per se* as:

"(1) Libels which impute to a person the commission of a crime.

"(2) Libels which have a tendency to injure him in his office, profession, calling or trade.

"(3) Libels which hold him up to scorn and ridicule and to feelings of contempt or execration, impair him in the enjoyment of society and injure those imperfect rights of friendly intercourse and mutual benevolence which man has with respect to man." at page 458.

The court went on to say:

"This court has also held as libelous *per se* words which impute to one un-

fitness to perform the duties of his employment or which have a tendency to prejudice him in such employment. Rice v. Honolulu Star-Bulletin, Ltd., 26 Hawaii 196, 206 (1921). Although not considered previously in this jurisdiction, it has generally been held that imputation of insanity or impairment of mental faculties is libelous *per se* . . ." at pages 458–459.

■ Under these principles, Plaintiffs-Car A and Plaintiffs-Car B have not made out a cause of action for libel under Hawaii law. The bar letter is not libelous *per se*. Trespass is not necessarily a crime, and even if it were, it is not every crime the imputation of which is libelous *per se*, but only crimes involving moral turpitude or a discreditable or disgraceful thing. The libelous nature of the bar letter is not obvious without an innuendo and the actionable character of such a libel depends upon a showing of special damages. There being neither an innuendo nor an allegation of special damages, the Seventh Cause of Action does not state a claim upon which relief can be granted.

*Immunity and Good Faith*

Defendants raise immunity and good faith as affirmative defenses.

■ The principle enunciated in Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896) to shield heads of executive departments, and extended by Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) to include officers of lower rank in the executive hierarchy, grants absolute immunity regardless of motive from liability for damages for defamation and kindred torts based on discretionary acts related to matters committed by law to the official's control or supervision. These definitional limitations are expressed in Green v. James, 473 F.2d 660 (9th Cir. 1973) as requirements that the official "(1) was acting within the outer perimeter of his official duties and (2) was

grounds, 447 F.2d 245 (2d Cir. 1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1172, 31 L.

Ed.2d 240 (1972); CCCO–Western Region v. Fellows, *supra* (semble).

performing discretionary (as opposed to ministerial) acts."

The reference in Barr v. Matteo to "defamation and kindred torts" is not to be taken as a further limitation on the immunity defense only to damage actions based on written or spoken words. Protection is afforded from civil liability for damages arising out of other kinds of activities.[21]

■ On the other hand, the immunity defense is not available to law enforcement officers performing police duties such as making arrests and conducting searches and seizures.[22]

But a law enforcement officer may allege and prove in defense his subjective good faith belief that his conduct was lawful and the objective reasonableness of this belief under the circumstances.[23]

■ These principles apply whether the action is a common-law tort suit, a § 1983 civil rights suit, or a *Bivens*-type constitutional suit. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), held specifically that the defense of "good faith and probable cause" which was available to officers in a common-law action for false arrest and imprisonment is also available in actions under § 1983, and *Bivens* (on remand at 456 F.2d 1339) held specifically that this same defense is available in an action under the Fourth Amendment.

Variations of the immunity defense appear in other contexts. Judge Craven in Kirstein v. Rector and Visitors of University of Virginia, 309 F.Supp. 184 (E.D.Va.1970), seems to suggest that good faith might be one ground for invoking the defense of official immunity (rather than a separate defense where the immunity defense is unavailable). In Briscoe v. Kusper, 435 F.2d 1046, 1057–1058 (7th Cir. 1971), the court speaks of a "qualified immunity" from personal liability for damages "where defendant officials have acted out of good faith and upon reasonable grounds" in a case that did not involve police activities. Where written or spoken words are involved, the several categories of privilege in the law of libel may be relevant, as was noted in Barr v. Matteo, 355 U.S. 171, 173, 78 S.Ct. 204, 2 L.Ed.2d 179 (1957).[24]

■ The threshold questions as to the availability of the immunity defense are often unanswerable without a full evidentiary hearing. The court faced such a situation in, for example, Green v. James, *supra*, Safeguard Mutual Insurance Co. v. Miller, 472 F.2d 732 (3rd Cir. 1972), and Johnson v. Alldredge, 349 F.Supp. 1230 (M.D.Pa.1972). And while summary judgment upholding the good faith reasonable belief defense has been granted, that too generally depends upon a more complete record than is usually available in advance of trial.[25]

Further complications in this case arise from the circumstance that the acts complained of may have been in part the kind of acts performed by law enforcement officers and in part not, and that the officers complained of may

---

21. *See* Leighton v. Peters, 356 F.Supp. 900 (D.Hawaii 1973) (sailor claiming against officer for harassment) ; Krause v. Rhodes, 471 F.2d 430 (6th Cir. 1972) (civil rights and wrongful death actions arising out of use of Ohio National Guard in connection with Kent State University confrontations) ; Lassin v. Tarr, 351 F.Supp. 1 (E.D.Pa.1972) (summary removal of selective service board member without due process by national director of selective service system) ; Reese v. Nixon, 347 F.Supp. 314 (D.D.Cal.1972) (assorted claims against high federal and state officials).

22. Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc., 456 F.2d 1339 (2d Cir. 1972) ; Jones v. Perrigan, 459 F.2d 81 (6th Cir. 1972) ; Tritsis v. Backer, 355 F.Supp. 225 (N.D.Ill.1973).

23. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ; Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc., 456 F.2d 1339 (2d Cir. 1972) ; Rodriguez v. Jones, 473 F.2d 599 (5th Cir. 1973).

24. *See also* Barr v. Matteo, 100 U.S.App.D.C. 319, 244 F.2d 767 (1957), and, after remand, 103 U.S.App.D.C. 176, 256 F.2d 890 (1958).

25. *Compare* Boyd v. Huffman, 342 F.Supp. 787 (N.D.Ohio 1972) *with* Hughes v. Johnson, 305 F.2d 67 (9th Cir. 1962).

have been acting in different capacities at different times.[26]

I have specifically in mind, based upon the present record, the probability that Defendant Paxton is entitled to the defense of immunity in connection with the issuance of the bar letters,[27] whereas the availability of this defense in connection with his involvement, if any, in the detention, photographing, and fingerprinting of Plaintiffs-Car A and Plaintiffs-Car B is not yet clearly established.[28]

*Conclusion*

The motion to dismiss is granted as to the Fourth Cause of Action and as to the Seventh Cause of Action and is denied as to the other causes of action.

The motion for summary judgment is denied.

26. Judge Medina points out in Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc., 456 F.2d 1339, 1346 (2d Cir. 1972), that labeling an act discretionary or nondiscretionary is a policy decision that depends upon the range and scope of the officials' responsibilities and duties.

27. *Compare* Gordon v. Adcock, 441 F.2d 261 (9th Cir. 1971).

28. *See* Boyd v. Huffman, *supra,* where plaintiffs argued that prosecuting attorneys were acting as policemen when they accompanied deputy sheriffs to seize plaintiff's film.