Raul Edward REVIS, Plaintiff,

v.

Melvin LAIRD, Secretary of Defense, et al., Defendants.

Civ. No. S-2534 TJM.

United States District Court,
E. D. California.

March 31, 1975.

Richard Keith Corbin, Sacramento, Cal., for plaintiff.

Brewster Q. Morgan, Asst. U. S. Atty., Sacramento, Cal., for defendants.

## OPINION

MacBRIDE, Chief Judge.

Plaintiff Raul Edward Revis alleges racial discrimination in his employment with the United States Air Force at McClellan Air Force Base, California. The complaint arises from plaintiff's employment on February 11, 1966, as a Mobile Equipment Repairer, W–9, at the Air Force Base. Defendants are the Secretary of Defense, the Secretary of the Air Force, the Commander, Vice-Commander and Deputy Commander of McClellan Air Force Base, the Chief of the Equal Employment Opportunity Office and the Chief of Civilian Personnel at McClellan Air Force Base, and four supervisors of the Vehicle Transportation Division at the Air Force Base, all in their official and individual capacities. The United States is also a party defendant.

Plaintiff submitted a claim to the Civil Service Commission on August 28, 1970, which claim was denied on November 29, 1971. In this regard, plaintiff sues the chairman and two vice-chairmen of the Civil Service Commission and the Chairman of the Board of Appeals and Review, and alleges abuse of discretion in ratifying the denial of plaintiff's claim of racial discrimination. These defendants are also sued in their official and individual capacities.

The prayer is for injunctive relief, award of back pay, declaratory judgment, costs of suit and reasonable attorney's fees, compensatory damages of $25,000 as to each defendant, compensatory damages against the United States of $9,999.99, and punitive damages against all the defendants except the United States in the sum of $100,000.

In his second amended complaint, plaintiff invokes jurisdiction of this court pursuant to Title 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1343 (jurisdiction to redress deprivations of various civil rights); and 28 U.S.C. § 2201 (declaratory relief). Plaintiff alleges causes of action grounded under Title 42 U.S.C. § 2000e et seq.; § 1981; § 1983; § 1985; the First Amendment; the Fifth Amendment; Federal "common law"; and Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff also invokes the court's review powers under the Administrative Procedure Act, Title 5 U.S.C. § 701 et seq.

Suit was filed in this court on July 28, 1972. On August 7, 1973, the defendants moved to dismiss on various grounds. On June 20, 1974, defendants incorporated their motion to dismiss in a motion for summary judgment. On August 15, 1974, plaintiff filed a cross-motion for summary judgment. The case is here now on these cross-motions for summary judgment and this court will proceed to deal with the numerous legal questions raised by this case.

## RETROACTIVE EFFECT OF 42 U.S.C. § 2000e–16

Title 42 U.S.C. § 2000e–16, enacted on March 24, 1972, provides that a federal employee or an applicant for employment "aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 . . . ." In the instant case the claim of racial discrimination was filed with the Civil Service Commission on August 28, 1970, and the Civil Service Commission rendered its decision denying the claim on November 29, 1971. As these events all occurred prior to the March 24, 1972, enactment of § 2000e–16, the question arises as to the retroactive effect of that section.

As an initial matter, it should be noted that for many years prior to March 24, 1972, a series of Executive Orders provided safeguards to federal employees against racial discrimination. The earliest such Executive Order relevant here is E.O. 9980, July 26, 1948, 3 CFR 720 (1943–48 Comp). There followed E.O. 10590, January 18, 1955, 3 CFR 237 (1954–58 Comp); E.O. 10925, March 6, 1961, 3 CFR 448 (1959–63 Comp); E.O. 11246, September 24, 1965, 3 CFR 339 (1964–65 Comp); and E.O. 11478, August 8, 1969, 3 CFR 803 (1966–70 Comp). All of these orders established a policy against racial discrimination in Federal employment and all prescribed procedures for the processing of discrimination complaints.

Nevertheless, the drafters of the 1972 Act which created § 2000e–16 were aware that even though federal employees had the substantive right to be free of discrimination on the basis of race, there was much disenchantment with the means available for the enforcement of that right. Thus, the Senate Report on the 1972 Act stated that "testimony before the [Senate] Labor Subcommittee reflected a general lack of confidence in the effectiveness of the complaint procedure on the part of Federal employees." 92nd Cong.2d Sess.

423 (1972). It was further found that "an aggrieved Federal employee [did] not have access to the courts. In many cases, the employee [had to] overcome . . . a Government defense of sovereign immunity." 92nd Cong. 2d Sess. 425 (1972). It was to overcome such shortcomings that § 2000e–16 was enacted to provide that "aggrieved [federal] employees or applicants [would] also have the full rights available in the courts as [were] granted to individuals in the private sector . . ." 92nd Cong. 2d Sess. 425 (1972).

Only four circuit courts have spoken to the issue of retroactive application of § 2000e–16, and the result has been a split of authority. The District of Columbia, the Second and the Fourth Circuits have all held that § 2000e–16 has retroactive effect. Womack v. Lynn, 504 F.2d 267 (D.C.Cir. 1974); Brown v. General Services Administration, 507 F.2d 1300 (2d Cir. 1974); Koger v. Ball, 497 F.2d 702 (4th Cir. 1974); Clark v. Goode, 499 F.2d 130 (4th Cir. 1974). The Sixth Circuit has held that § 2000e–16 does not have retroactive application. Place v. Weinberger, 497 F.2d 412 (6th Cir. 1974). The district courts which have considered the question have gone both ways: Hackley v. Johnson, 360 F. Supp. 1247 (D.C.D.C.1973) (retroactive); Hall-Vincent v. Richardson, 359 F.Supp. 308 (D.C.Ill.1973) (non-retroactive); Walker v. Kleindienst, 357 F. Supp. 749 (D.C.D.C.1973) (retroactive); Mosely v. United States, 6 FEP Cases 462 (Cal. Jan. 23, 1973); (non-retroactive); Johnson v. University of Pittsburgh, 359 F.Supp. 1002 (D.C.Pa.1973) (retroactive); Henderson v. Defense Contract Administration, 370 F.Supp. 180 (D.C.N.Y.1973) (retroactive); Fears v. Catlin, 377 F.Supp. 291 (D.C.Colo. 1974) (retroactive); Jones v. United States, 376 F.Supp. 13 (D.C.D.C.1974) (non-retroactive); Ficklin v. Sabatini, 378 F.Supp. 19 (D.C.Pa.1974) (retroactive).

It appears that the courts, in construing the statute, have split on the question of its retroactivity primarily as a

result of the rule of construction employed. Thus, courts which refuse to apply § 2000e–16 retroactively seem to do so on the theory that "waivers of sovereign immunity must be strictly construed." Place v. Weinberger, 497 F.2d 412, 414 (6th Cir. 1974). On the other hand, those courts applying § 2000e–16 retroactively have done so on the theory that the section is a remedial statute, and "a remedial statute shall be so construed as to make it effect its evident purpose and if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied." Henderson v. Defense Contract Administration, 370 F.Supp. 180, 183 (D.C.N.Y.1973).

Because of the posture of the instant case, however, this court need not choose whether to follow the lead of the District of Columbia, the Second and the Fourth Circuits and apply § 2000e–16 retroactively, or whether to follow the lead of the Sixth Circuit and refuse to give § 2000e–16 retroactive application. Even the Circuits which have applied § 2000e–16 retroactively have done so on a limited basis. Thus, these Circuits have determined that § 2000e–16 should not be retroactive to all claims arising prior to its enactment, but only as to claims *pending* before the governmental agency or the Civil Service Commission on March 24, 1972. Womack v. Lynn, 504 F.2d 277 (D.C.Cir. 1974); Brown v. General Services Administration, 507 F. 2d 1300 (2d Cir. 1974); Koger v. Ball, 497 F.2d 702 (4th Cir. 1974); Clark v. Goode, 499 F.2d 130 (4th Cir. 1974). See also Fears v. Catlin, 377 F.Supp. 291 (Colo.1974); Ficklin v. Sabatini, 378 F. Supp. 19 (Pa.1974).

■ In the instant case, plaintiff filed his claim of racial discrimination with the Civil Service Commission on August 28, 1970, and the Civil Service Commission rendered its decision denying the claim on November 29, 1971. It is clear that plaintiff's claim was no longer pending before the Civil Service Commission at the time § 2000e–16 was enacted, and thus, even under the most liberal view, plaintiff cannot now state a cause of action under § 2000e–16.

## PRE–EMPTION

Defendants have argued that the enactment of § 2000e–16 was a manifestation of Congressional intent to create new substantive remedies and procedures for federal employees as against the federal government. In this regard, defendants assert that § 2000e–16 pre-empts the field of causes of action which might have existed for federal employees seeking to redress deprivations of civil rights by their federal employer. On this basis, defendants contend that plaintiff can have no cause of action under 42 U.S.C. §§ 1981, 1983, and 1985.

Whether § 2000e–16 was in fact intended to pre-empt the field is a most difficult question but one which this court need not reach in this case. Since it is clear, as noted in the prior section of this opinion, that plaintiff's claim arose prior to the enactment of § 2000e–16, the court need not reach the question whether § 2000e–16 pre-empts all other causes of action, but rather, the court need only determine whether federal employees had a cause of action against their federal employer for racial discrimination under either 42 U.S.C. §§ 1981, 1983, or 1985, prior to March 24, 1972. Bowers v. Campbell, 505 F.2d 1155 (9th Cir. 1974).

It is true that some courts have held that federal employees had *no causes of action* against their federal employer for racial discrimination prior to the enactment of § 2000e–16. Place v. Weinberger, 497 F.2d 412 (6th Cir. 1974). This, however, is not the rule in the Ninth Circuit. Bowers v. Campbell, 505 F.2d 1155 (9th Cir. 1974).

■ (1) Federal employees may state a claim for relief under § 1981 against federal officials for employment discrimination. Bowers v. Campbell, 505 F.2d 1155 (9th Cir. 1974).

■ (2) Federal employees may not state a claim for relief under § 1983

against federal officials for employment discrimination. The Ninth Circuit has held that § 1983, based on the Fourteenth Amendment, deals only with those deprivations of rights that are accomplished under the color of the law of any State or Territory. Bowers v. Campbell, 505 F.2d 1155 (9th Cir. 1974).

■ (3) Although not specified in the second amended complaint, plaintiff apparently relies upon § 1985(3) for a cause of action. The elements of a cause of action under § 1985(3) are: (a) a conspiracy by defendants, (b) for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (c) that one or more of the conspirators did an act in furtherance of the object of the conspiracy whereby another was, (d) injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States. Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

There are Ninth Circuit cases which stand for the proposition that § 1985(3) reaches only conspiracies under color of state law. Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959); Koch v. Zuieback, 194 F.Supp. 651 (D.C.Cal.1961) affirmed 316 F.2d 1 (9th Cir. 1963). However, since the Supreme Court's decision in Griffin, supra, these cases must be considered of historical value only. Butler v. United States, 365 F.Supp. 1035 (D.C. Hawaii 1973). As the Supreme Court noted in Griffin:

" . . . all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies." 403 U.S. at 101, 91 S.Ct. at 1798.

The question in this case, however, is whether a cause of action may be stated under § 1985(3) against *federal* officers. Subsequent to Griffin, two courts have held that § 1985(3) would not countenance private suits for damages against federal officers. Bethea v. Reid, 445 F.2d 1163 (3d Cir 1971); Williams v. Halperin, 360 F.Supp. 554 (D.C.N.Y. 1973). However, neither of these cases either noted or discussed Griffin, and both cases cited and relied upon pre-Griffin case law.

■ The Supreme Court in Griffin made clear that § 1985(3) was grounded on the Thirteenth Amendment (prohibiting the incidents of slavery), rather than the Fourteenth Amendment (dealing with state action). Griffin, supra, 403 U.S. at 104–105, 91 S.Ct. 1790. Two years after Griffin, the Supreme Court dealt with the applicability of 42 U.S.C. § 1982, also springing from the Thirteenth Amendment; the rationale of that case is equally applicable to the instant case:

" . . . like the [Thirteenth] Amendment upon which it is based, § 1982 is not a 'mere prohibition of State laws established or upholding' racial discrimination in the sale or rental of property but, rather, an 'absolute' bar to *all* such discrimination, private as well as public, *federal* as well as state." (emphasis added) District of Columbia v. Carter, 409 U.S. 418, 422, 93 S.Ct. 602, 605, 34 L.Ed.2d 613 (1973).

The Ninth Circuit has held that § 1981, also based on the Thirteenth Amendment, is applicable to federal officials. Bowers v. Campbell, 505 F.2d 1155 (9th Cir. 1974). Similarly, this court holds that § 1985(3) is applicable as a cause of action against federal officers, at least where the cause of action is grounded in a claim of racial discrimination.

## CAUSES OF ACTION UNDER THE FIRST AND FIFTH AMENDMENTS, FEDERAL COMMON LAW AND BIVENS

Plaintiff seeks to establish causes of action to redress deprivations of his rights under the First and Fifth Amendments, Federal "common law," and Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619

(1971). Defendants contend that causes of action may not be established on these cases.

Actually, it appears that plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) to redress deprivations of rights under the First and Fifth Amendments. The rationale for such causes of action appears to be based on Federal "common law" and *Bivens*.

In *Bivens* the Supreme Court held that the Fourth Amendment right to be secure against unreasonable searches and seizures would support a federal cause of action for damages consequent upon a violation of that right. The court in *Bivens* rejected the government's position that the protection of the rights secured by the Fourth Amendment should be left to state tort law with the Fourth Amendment as a limit on possible defenses to such actions. The question posed in this case is whether causes of action should be similarly recognized for First and Fifth Amendment claims.

The few courts which have considered this question have generally determined that both First and Fifth Amendment claims can be cognizable as causes of action under the rationale of *Bivens*. United States Marine Lines, Inc. v. Shultz, 498 F.2d 1146 (4th Cir. 1974) (Fifth Amendment); Butler v. United States, 365 F.Supp. 1035 (Hawaii 1973) (First and Fifth Amendments); Moore v. Koelzer, 457 F.2d 892 (3d Cir. 1972) (Fifth Amendment). *Contra* see Davidson v. Kane, 337 F.Supp. 922 (Va. 1972). The reasoning of the cases recognizing causes of action on either the First or the Fifth Amendment is that the rights protected by these amendments are no less important than the rights protected by the Fourth Amendment, and in fact, are interrelated. Stanford v. Texas, 379 U.S. 476, 484–485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

The reasoning of these cases is, indeed, persuasive. If the Supreme Court is willing to recognize a federal cause of action for the deprivation of rights guaranteed by the Fourth Amendment, it would be illogical to interpret that decision so narrowly as to limit it only to the Fourth Amendment and preclude causes of action on equally important rights guaranteed by the First and the Fifth Amendments.

The question nevertheless arises with respect to the amount in controversy requirement of 28 U.S.C. § 1331. In this regard, the court is in agreement with Judge Peckham in CCCO-Western Region v. Fellows, 359 F.Supp. 644 (Cal. 1972). where it is indicated that where the claim is deprivation of constitutionally protected rights, it cannot be said with a legal certainty that the claim is for less than the jurisdictional amount. See also Butler v. United States, 365 F. Supp. 1035 (Hawaii 1973).

■ Accordingly, this court concludes that jurisdiction is proper pursuant to 28 U.S.C. § 1331 on causes of action to redress alleged deprivations of rights under the First and Fifth Amendments.

## SOVEREIGN IMMUNITY

■ Defendants have raised the doctrine of sovereign immunity as an alleged bar to the maintenance of this action. However, sovereign immunity poses no jurisdictional bar to plaintiff's action. If plaintiff prevails on his claims, it will be because the federal officials have engaged in racially discriminatory employment practices which are forbidden by either the constitution or by statute. Bowers v. Campbell, 505 F.2d 1155 (9th Cir. 1974). As noted by the Supreme Court in Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949);

"[W]here the [federal] officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his

authority and therefore may be made the object of specific relief."

It should be noted, however, that while the doctrine of sovereign immunity would not bar this action, it may provide a defense of varying degrees to the executive officers involved, Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) or it may limit the type of relief to which plaintiff may ultimately be entitled. Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972).

## SCOPE OF REVIEW

■ In this case plaintiff seeks relief in a civil rights action after unsuccessfully running the Civil Service Commission gauntlet. Plaintiff claims that he is entitled to a *de novo* trial in this court. Defendants contend that this court should only look to the administrative record. The question of the scope of review in actions brought both to review agency action under the Administrative Procedure Act and to redress the deprivation of civil rights under the Civil Rights Act is now settled in this Circuit. Bowers v. Campbell, 505 F.2d 1155 (9th Cir. 1974). In *Bowers* the Court of Appeals determined that actions of this nature must be governed by *both* the Administrative Procedure Act, 5 U.S.C. § 701 et seq. and the *de novo* hearing normally required in civil rights cases. Faced with both requirements, the Court of Appeals developed a ·hybrid review process which would accommodate the necessities affording due regard to the prior administrative proceedings while ensuring that the plaintiff's rights to a full and fair hearing on his civil rights claim was preserved. To effectuate this end, the Court of Appeals in *Bowers* enunciated the following scope of review:

"After· the administrative record has been introduced into evidence, the court must consider the final agency determination in the light of the procedural fairness that was accorded to the claimant during the administrative proceedings and the adequacy of the record in all other respects bearing upon the discrimination issues. If, in the exercise of its reasoned discretion, the district court finds the record wanting, it can disregard the administrative determination of fact and law on the discrimination issues. If it decides that the agency reached sound conclusions on the basis of proceedings that provided the claimant a full and fair opportunity to present his or her grievances, the court will afford it that deference which is appropriate under all of the circumstances of the case. Both the employee and the employer shall have the right to adduce additional evidence to supplement the administrative record."

■ In his cross-motion for summary judgment, plaintiff has asserted that the administrative record contains "unquestionable discrimination evidence" and that the rejection of such a finding was "arbitrary, capricious and whimsical." In light of the teachings in *Bowers*, this court proceeds to review the administrative record in light of the procedural fairness that was accorded to the plaintiff during the administrative proceedings, and the adequacy of the record in all other respects bearing on the discrimination issue.

## REVIEW OF THE RECORD

■ After a thorough review of the rather voluminous administrative record in the instant case, this court must conclude that the plaintiff was accorded procedural fairness during administrative proceedings, that the plaintiff was afforded a full and fair opportunity to present his grievances, and that the decisions of the administrative agencies which denied his claim of racial discrimination were sound and based upon substantial evidence.

On July 8, 1970, plaintiff first contacted an Equal Opportunity Counselor because of his feelings of racial discrimination. Plaintiff's contentions at that time might be summarized into two broad categories: (1) he felt that his immediate supervisor (defendant Weigt)

had practiced racial discrimination; (2) he felt that he was being retained in a W–9 position rather than being promoted to a W–10 position due to racial discrimination. On August 25, 1970, plaintiff was transferred from his assignment in building 310 to building 411 and thereby added another general charge that (3) the transfer was motivated due to his filing of a charge with the Equal Opportunity Counselor.

A subsequent investigation by an Investigator for the Equal Opportunity Counselor was somewhat inconclusive, but noted that "there are slight indications of trends of discrimination in the Vehicle Repair Branch," where plaintiff was employed. The Investigator, however, made no specific finding that plaintiff was the subject of discrimination, but recommended that plaintiff be promoted to W–10 through non-competitive action because for all intents and purposes, plaintiff had been performing the work of a W–10 mechanic. Inasmuch as the Investigator did not find specific evidence of discrimination as to plaintiff, the Civilian Personnel Office determined that there was no regulatory basis for promotion on a non-competitive basis and so advised plaintiff on October 30, 1970. Plaintiff was further advised that he could request a hearing before an appeals examiner with a review by the Director of Equal Employment Opportunity, Department of the Air Force. Plaintiff requested such a hearing which was held on January 14 and 19, 1971. At this hearing, plaintiff was represented by a chief steward and senior steward of the American Federation of Government Employees, evidence was presented and testimony was taken.

As to the complaint of discrimination by plaintiff's immediate supervisor (defendant Weigt), plaintiff at the hearing testified that Weigt used the terms "wetback" and "taco" in reference to him on numerous occasions. This allegation was generally denied by Weigt, although he stated that the possibility exists he might have referred to plaintiff in these terms in talking to others, but only in jest or frivolity. There was evidence in the record to indicate that employees in building 310 often referred to each other in terms relating to their racial backgrounds, although the intention of such references was not as a racial slur. On the basis of the evidence in the record, the appeals examiner could conclude, as he did, that any references by Weigt in the use of "wetback" or "taco" were done in a joking manner and not as a racial slur. The appeals examiner could also conclude, as he did, that "such comment is certainly an unfortunate one as it tends to set up a psychological situation where the [plaintiff] would be more sensitive to acts or words that might appear to be discriminatory."

Plaintiff also felt that his immediate supervisor (defendant Weigt) discriminated against him by not promoting him from W–9 to W–10 even though he performed the work of a W–10 mechanic. Although there is certainly support in the record for the proposition that plaintiff performed work at the level of W–10, there is also ample evidence that plaintiff's failure of promotion was the result of low test scores. Evidence was presented at the hearing that promotions to W–10 were done on the basis of a "promotion profile" where workers were ranked according to a score. This score was dependent upon three factors: an experience rating, an appraisal rating, and a test score. The highest and lowest rankings on the profile in question were 286 and 268, respectively. Plaintiff's total ranking at the time was 229. The hearing record reflects that it was the low test score of plaintiff which kept him off the promotion profile. It was shown that even if plaintiff had received the maximum possible rating for experience and on the appraisal (factors which Weigt could influence) because of his low test score, the plaintiff would still be 32 points below the lowest score on the profile. Plaintiff presented no evidence nor made any allegations that

the test had been improperly administered or was defective.

Plaintiff also contended that he was transferred from building 310 to building 411 shortly after the filing of his complaint as a direct result of the complaint. Countering plaintiff's testimony in the record is the testimony of plaintiff's third-level supervisor and the responsible official (defendant White) that the transfer was due to instructions from higher headquarters which caused most W–9's to be transferred to building 411, and further that the transfer of plaintiff had nothing to do with the filing of his complaint. The appeals examiner apparently chose to believe White and to disbelieve the allegations of plaintiff. This court cannot here reweigh the evidence but can only look to determine whether substantial evidence exists in the record to support the determination of the appeals examiner. Based on the testimony of White, this court must conclude that there is substantial evidence in the record to support the appeals examiner's determination that although the transfer was unfortunately timed, it was not motivated by the filing of plaintiff's complaint.

Based upon these findings as supported by the record, it is somewhat surprising that the appeals examiner nevertheless concluded that: "I find sufficient evidence that racial discrimination has been practiced in the Vehicle Maintenance Branch and the Base Maintenance Equipment Section, McClellan Air Force Base, California." However, the examiner hastened to add that: "No particular person or persons can be singled out as practicing racial discrimination but the general environment and the [plaintiff's] case in particular reflects an absence and a lack of appreciation by on-the-spot management officials of the dilemma of a member of a minority racial group faced with an apparent unsolvable problem not of his making."

The court is fully mindful that racial discrimination may be very subtle in its ramifications, however, in light of the administrative record as reflected by the hearing record, it would certainly be permissible to reject the conclusion that "racial discrimination has been practiced" at plaintiff's shop. The appeals examiner concedes that no person can be singled out as practicing racial discrimination and indeed, the record is supportive of this contention. To say that the "general environment" of the shop reflects a lack of appreciation by management for the dilemma faced by minority group members does not lead to the conclusion that racial discrimination existed at plaintiff's shop.

In this regard, it was not an abuse of discretion for the Director of Equal Employment Opportunity, Department of the Air Force, on June 23, 1971, and the Board of Appeals and Review of the Civil Service Commission on November 29, 1971, to look at the record and the findings of the appeals examiner and conclude that plaintiff was not subject to racial discrimination.

It is therefore the conclusion of this court that plaintiff was accorded the sort of full and fair hearing envisioned by *Bowers, supra,* and that the decisions of the administrative agencies which denied his claim of racial discrimination were based on substantial evidence contained in the record and were therefore not arbitrary or capricious. On this basis, it is Ordered that the defendants' motion for summary judgment be Granted and that plaintiff's motion for summary judgment be Denied.